Makenna Miller (SBN 329244)
mmiller@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:  (213) 694-1200

Nicholas Matich (pro hac vice forthcoming)
nmatich@ mckoolsmith.com
**MCKOOL SMITH, P.C.**
1999 K Street, NW, Suite 600
Washington, DC 20006
Telephone:  (202) 370-8300

Gary Cruciani (pro hac vice forthcoming)
gcruciani@mckoolsmith.com
Mu Lin Hsu (pro hac vice forthcoming)
chsu@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000

Attorneys for Plaintiff Anduril Industries, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDURIL INDUSTRIES, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>SALIENT MOTION INC., a Delaware corporation, KAI YIN, an individual, AIDAN JENKINS, an individual, and VISHAAL MALI, an individual,<br><br>            Defendants. | Case No. 8:23-CV-01650<br><br>**COMPLAINT FOR, INTER ALIA, MISAPPROPRIATION OF TRADE SECRETS, BREACH OF CONTRACTS, FALSE ASSOCIATION, CONVERSION, DECLARATORY JUDGMENT OF OWNERSHIP AND FOR INJUNCTIVE RELIEF**<br><br>DEMAND FOR JURY TRIAL |

## I.    NATURE OF THE ACTION

1.    Plaintiff Anduril Industries, Inc. ("Anduril") brings this Complaint for, among other things, theft of trade secrets, violation of the Digital Millennium Copyright Act, conversion, and breach of contract against former Anduril Employees Kai Yin ("Yin"), Vishaal Mali ("Mali"), and Aiden Jenkins ("Jenkins") (collectively "Employee Defendants") and their newly created company Salient Motion Inc. ("Salient").

2.    In 2021, Anduril hired Yin, then a recent college graduate, as a staff engineer.  Yin's supervisors assigned him to work on motor control software in support of Anduril's booming national security business.

3.    While getting paid by Anduril to develop motor control technology, and after gaining exposure to Anduril's trade secrets, Yin began working with Mali and Jenkins to create Salient, which would sell motor control technology to other companies.  Yin never gave Anduril the technology he developed while employed by Anduril.  Instead, Yin lived a double work-life.  He spent his time at Anduril writing one set of software code for Anduril, that was generally substandard and had to be fixed by other Anduril engineers, while secretly writing *better* code to solve the *same engineering problems* for Salient.  At the same time, Yin secretly applied for a patent *in his own name* relating to the very same motor control technologies he was working on at Anduril.

4.    When they were finished using Anduril to provide them access to trade secrets and fund their secret code development, Yin, Mali, and Jenkins took Yin's secret code and his patent application to their new company and solicited investment from Anduril investors, falsely claiming Anduril's endorsement of their new venture. Moreover, Salient and its co-conspirators falsely claimed to potential Salient customers and investors (some of whom were Anduril investors) that that *Anduril* drones had flown almost a million miles using *Salient's* software.  Anduril's products run Anduril software, not Salient's.  Afterall, Kai hid the secret code he brought to Salient from Anduril so it couldn't have ever run on Anduril products.  Salient and its co-conspirators

COMPLAINT

also claimed that Anduril's competitors could get ahead of Anduril by licensing Salient's (i.e., Anduril's) intellectual property from Salient.  In fact, Salient owns nothing worth licensing, because anything valuable in its code and other intellectual property was stolen from Anduril through the Employee Defendants' fraud.  As a result, the Court should enjoin Employee Defendants and Salient from continuing their fraudulent scheme and enter an award of exemplary and punitive damages against Salient.

## II.    THE PARTIES

5.    Anduril is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1375 Sunflower Ave, Costa Mesa, California 92626.

6.    Defendant Salient Motion, Inc. ("Salient") is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 4305 Sandburg Way Irvine, California 92612.  Salient's registered agent is Corporation Service Company located at 2710 Gateway Oaks Drive, Sacramento, California, 95833.

7.    Yin is a resident of Irvine, California.

8.    Mali is a resident of Irvine, California.

9.    Jenkins is a resident of Irvine, California.

## III.    JURISDICTION AND VENUE

10.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Anduril's claims arising under federal law.

11.    Pursuant to 18 U.S.C. § 1336(c), this Court has original jurisdiction over Anduril's claims arising under the Defend Trade Secrets Act.

12.    Pursuant to 28 U.S.C. § 1338, this Court has original jurisdiction over Anduril's claims arising under the Digital Millennium Copyright Act, the Lanham Act, and state laws regarding unfair competition.

13.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over

Anduril's state law claims, because the claims arise from the same common nucleus of operative facts.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because all defendants reside in this District.

15.     The Court has specific personal jurisdiction over all defendants and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District.  For example, the Employee Defendants were all working out of Anduril's offices in this district when they developed and executed their plan to misappropriate Anduril's intellectual property.  Defendants continued their course of conduct at Salient's headquarters in this district.  Yin provided an address in this District, 135 Parakeet, Irvine, CA 92620, when he filed his patent application claiming Anduril intellectual property.

16.     This Court has general personal jurisdiction over Salient because it maintains its principal place of business in this District at 4305 Sandburg Way Irvine, California 92612.

17.     The Court has general personal jurisdiction over the Employee Defendants because they reside in this District or did so at the time of the relevant events.

18.     California Code of Civil Procedure § 410.10 provides that a "court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

## IV.    FACTUAL BACKGROUND

### A.    Anduril's Business

19.     Anduril is a defense products company founded in 2017 that specializes in developing autonomous systems that support operations of the U.S. Department of Defense and U.S. Department of Homeland Security.  Anduril's engineers are experts in artificial intelligence, vehicle (air, land, and subsurface) autonomy, robotics, advanced sensors and optics, secure and mesh networking, aerospace, and aircraft modeling and simulation.

COMPLAINT

20.     Anduril derives substantial economic benefit from its trade secrets, including computer code developed by its employees.   For example, Anduril's computer software fuses data from various sensors into a single user interface, which is critical to the functioning of many Anduril products.  Relevant here, Anduril develops custom motor control software for, among other things, its autonomous vehicle products.

21.     If Anduril did not maintain the confidentiality of Anduril computer code, Anduril competitors could reverse engineer Anduril products to make competing versions.  Further, Anduril's major customers include the U.S. Department of Defense, the U.S Department of Homeland Security, and allied defense agencies.  Making public Anduril's computer code and other aspects of Anduril product design would make its products easier for U.S. adversaries to defeat and therefore make the products less desirable to Anduril's customers.  The forgoing applies to the code Yin was tasked with developing as an Anduril employee.

22.     Anduril takes significant steps to preserve the confidentiality of its trade secrets, including computer code developed by its employees.   For example, as discussed below, Anduril requires employees and other parties with access to trade secret information to sign confidentiality agreements, limits access to computer code and other trade secrets on a need-to-know basis, maintains secure physical premises, marks documents containing confidential information, uses software and other techniques to monitor for attempted exfiltration of confidential information from Anduril systems, and enforces a policy of requiring employees to write Anduril software code only in an access-controlled computing environment.

**B.     Employment Agreements**

23.     The Employee Defendants are all former Anduril engineers and employees who had access to Anduril's proprietary information, including computer source code relating to motor controllers.

24.     Mali began working for Anduril on November 2, 2020.

4

1    25.    Jenkins in began working for Anduril on February 22, 2021.

2    26.    Yin began working for Anduril on May 17, 2021.

3    27.    Each Employee Defendant signed a substantially similar offer letter and

4    employment agreement prior to starting their work at Anduril ("Employment

5    Agreements").  A true and correct copy of the Employment Agreements are attached as

6    Exhibits A-C.

7    28.    Among other terms, the Employment Agreements provided:

8              During employment with Anduril, you will not engage in any

9              other employment, consulting or other business activity that

10             would create a conflict of interest with Anduril without the

11             prior written consent of Anduril. By signing this letter

12             agreement, you confirm to Anduril that you have no

13             contractual commitments or other legal obligations that

14             would interfere with or prohibit you from fully performing

15             your duties for Anduril.

16

17             …

18

19             Like all Anduril employees, as a condition of your

20             employment with Anduril, you will be required to sign

21             Anduril's standard Proprietary Information and Inventions

22             Agreement, a copy of which will be provided upon request.

23    29.    As provided in their Employment Agreements, Employee Defendants

24    signed Anduril's standard Proprietary Information and Inventions Agreement ("PIIA").

25    A true and correct copy of the PIIAs are attached as Exhibits D-F.  Among other terms,

26    the PIIAs provided:

27             I have not entered into, and I agree I will not enter into, any

28             agreement either written or oral in conflict with this

5

COMPLAINT

Agreement or my employment with Company. I will not violate any agreement with or rights of any third party or, except as expressly authorized by Company in writing hereafter, use or disclose my own or any third party's confidential information or intellectual property when acting within the scope of my employment or otherwise on behalf of Company. Further, I have not retained anything containing any confidential information of a prior employer or other third party, whether or not created by me.

Company shall own all right, title and interest (including patent rights, copyrights, trade secret rights, mask work rights, sui generis database rights and all other intellectual property rights of any sort throughout the world) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by me during the term of my employment with Company to and only to the fullest extent allowed by California Labor Code Section 2870 (which is attached as Appendix A) (collectively "Inventions") and I will promptly disclose all Inventions to Company.

…

I agree that all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my

COMPLAINT

employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence, constitute "Proprietary Information." I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information. However, I shall not be obligated under this paragraph with respect to information I can document is or becomes readily publicly available without restriction through no fault of mine. Upon termination of my employment, I will promptly return to Company all items containing or embodying Proprietary Information (including all copies), except that I may keep my personal copies of (i) my compensation records, (ii) materials distributed to shareholders generally and (iii) this Agreement.

Until one year after the term of my employment, I will not encourage or solicit any employee or consultant of Company to leave Company for any reason (except for the bona fide firing of Company personnel within the scope of my employment).

I agree that during the term of my employment with Company (whether or not during business hours), I will not: (i) engage in any activity that is in any way competitive with the business or demonstrably anticipated business of Company; (ii) engage in any activity that would otherwise conflict with the Company's interests or cause a disruption of its business operations or prospects; and (iii) assist any other person or organization in competing or in preparing to compete with

COMPLAINT

1
2
3
4

any business or demonstrably anticipated business of Company or to engage in any activity that would otherwise conflict with the Company's interests or cause a disruption of its business operations or prospects.

5   **C.   Yin Creates the Secret Optimized Code**

6   30.   As an undergraduate at Arizona State University ("ASU"), Yin developed software code related to electric motor controllers ("Pre-Anduril Yin Code") (collectively all code developed by Yin is the "Yin Code"). Motor controllers are the parts of a motor system that control the start, stop, speed and other operations of a motor. Motor control software is designed to send and receive signals from the motor to ensure, for example, a smooth start up and shut down that avoids damage or unnecessary wear on the physical components. When Anduril hired Yin, the Pre-Anduril Yin Code was a school project and not ready for commercial use.

14   31.   Anduril hired Yin to, among other things, write motor control software code (collectively all code developed by Yin during his time at Anduril is "Anduril Code"). Although Anduril does not sell motors or motor controllers as standalone products, cutting edge electric motors are key components of Anduril's products. Custom software that optimizes these motors' performance is an essential part of Anduril's business that differentiates it from its competitors.

20   32.   GitHub is a cloud-based repository commonly used by software developers to store computer code. Individuals can have GitHub repositories to store their personal work and organizations, like Anduril or Salient, can have GitHub repositories for their employees to perform work for the organization.

24   33.   During his time at Anduril, Yin's supervisor requested that he work on a particular aspect of Anduril's motor controller code to enable the motor to perform a given task. Unbeknownst to Anduril, in response to his supervisor's requests Yin would then develop *two* versions of the requested code, one he provided to Anduril ("Substandard Day Job Code"), and the other he developed secretly and outside

8

COMPLAINT

Anduril's computing environment ("Secret Optimized Code").

34.  Yin's Secret Optimized Code, created in response to his Anduril assignments, accomplished the assigned tasks, overcoming a major engineering obstacle.  However, Yin kept this Secret Optimized Code hidden from Anduril on a non-Anduril system and never told Anduril that such code existed.  The second version, "Substandard Day Job Code," Yin provided to his supervisors at Anduril, to give the impression that he was fulfilling his duties as an employee.  ***Although Yin's Substandard Day Job Code would perform the same task as the Secret Optimized Code, it was generally inferior and specifically omitted critical software developments that Anduril was working to accomplish but which were part of the Secret Optimized Code***.  Over the course of his employment, Yin repeated the pattern of developing Secret Optimized Code for himself (to solve problems he was assigned as an Anduril engineer) and Substandard Day Job Code for Anduril.

35.  The Secret Optimized Code and Substandard Day Job Code are both part of the Anduril Code.  By virtue of the PIIA and other circumstances of Yin's employment, the Anduril Code is a work for hire owned by Anduril.

36.  In developing the Secret Optimized Code, Yin acted with the approval and encouragement of the other Employee Defendants who were planning with Yin to use the Secret Optimized Code to establish Salient.

37.  By writing the Secret Optimized Code, separate from any of Anduril's systems, Yin breached Anduril's policy and avoided Anduril's measures to detect and prevent copying and exfiltration of its code.  For example, if the Anduril Code had been maintained entirely in Anduril's computing environment, Yin would have needed appropriate credentials to access it.  After he departed Anduril, Yin would not have been able to copy the Anduril Code to Salient's systems as he eventually did.  Further, Yin took additional steps to avoid detection of his activities by Anduril's extensive information security measures.

38.  Anduril derives independent economic value from maintaining trade

9

secrecy over the Anduril Code.  First, maintaining trade secrecy over the Anduril Code prevents copying.  If the Anduril Code were made public, Anduril's competitors would be able to copy and gain the benefit of Anduril's investment in developing the Anduril Code without themselves having to incur the costs Anduril incurred.  For example, competitors would not have to pay the salaries of engineers to write the code.  Copying, rather than going through the process of independent creation, can also move competitor's program ahead by months or years.  This potential copying would be difficult for Anduril to detect and would put Anduril's competitors at an advantage relative to Anduril.

39.    Further anyone desiring motor control code would ordinarily expect to pay a license fee to the code's owner or developer.  This also demonstrates that such code has economic value at least equal to the license fee that Salient would have had to pay to obtain substitute code.

40.    Employee Defendants' decision to build a company around the Secret Optimized Code and advertise to Salient customers and investors that its code has been tested in Anduril products demonstrates that the Anduril Code and Anduril brand have value and that Anduril obtains economic value from using trade secrecy to prevent copying.

41.    Further, public or more widespread disclosure of Anduril Code can make Anduril's products less attractive to its defense customers.  Knowledge of how the Anduril Code work provides insight to how Anduril products can be defeated or disabled.  If Anduril's code becomes public, its products could be more easily disabled by criminals or adversaries.  Anduril's products would then be less desirable to Anduril customers.

**D.    Yin Files a Secret Patent Application**

42.    On September 7, 2021, when starting his employment at Anduril, Yin signed a Personal Intellectual Property Disclosure ("PIPD").  A true and correct copy of the PIPD is attached as Exhibit G.  In the PIPD, Yin disclosed and provided Anduril

a royalty free license to "Field Oriented Control Implementation," the software Yin had written as a school project prior to his employment.

43.     Yin did not disclose any patent applications in his PIPD.  Nevertheless, ten days after signing his PIPD, on September 17, 2021, Yin filed a provisional U.S. patent application no. 63/245,545 ("'545 Application") titled "Saliency Tracking for Brushless DC Motors and Other Permanent Magnet Synchronous Motors."  Yin falsely told Anduril that this application belonged to ASU.

44.     Later, while still an Anduril employee, but without informing Anduril, Yin filed U.S. patent application no. 17/947,916, on September 19, 2022, ("'916 Application") claiming priority to his earlier provisional.  The specifications of the '545 and '916 Applications are similar.  However, while an Anduril employee, Yin added content in the later application.  For example, disclosure in paragraphs 61 and 96 of the '916 specification do not appear in the '545 specification.

45.     The technology described in the '545 and '916 Applications relates to the projects Yin was hired to work on at Anduril.  If a patent issued from those Applications to a person other than Anduril, it would limit Anduril's freedom to operate its business, by preventing Anduril from practicing the claimed technology without a license.  Yin's (and the other Employee Defendants') knowledge of Anduril's product design and business plans provide Yin special advantage in obtaining patent claims that would precisely cover Anduril's actual or future products, maximizing his and Salient's ability to hamper and/or demand licensing fees from their competitor, Anduril.

**E.     Employee Defendants Use Anduril and Anduril Intellectual Property to Launch their Competing Company, Salient Motion**

46.     From the earliest days of their employment, indeed, even before their employment, the Employee Defendants intended to collect Anduril salaries and steal Anduril intellectual property for their own venture.

47.     First, in November 2020, Yin, and three other parties entered a mutual non-disclosure agreement that prevented disclosure of information related to an "Advanced

Motor Controller." ("Motor Controller NDA").  The agreement prevented the signers from sharing with Anduril information related to their employment that would have benefited Anduril.  The Motor Controller NDA remained in force throughout Yin's employment at Anduril.  At no point did any of the Employee Defendants inform Anduril about this agreement.  This agreement also rendered false Yin's confirmation several months later in his Employment Agreements that he had "no contractual commitments or other legal obligations that would interfere with or prohibit [Yin] from fully performing [his] duties for Anduril."

48.   Beginning in 2022, Yin and Mali routinely failed to show up for work at Anduril.  When their supervisor asked their whereabouts and the reason for their absence, Yin and Mali lied.  In fact, they were using their time and Anduril resources to create Salient.

49.   For example, Yin and Mali held meetings with potential Salient investors at Anduril to give the impression that Anduril approved of their activities.  Yin and Mali were taking advantage of the fact that Anduril regularly supported employees' entrepreneurial ventures to mislead potential investors.  But, of course, Anduril would not have approved of the creation of Salient Motion, a company founded entirely on code stolen from Anduril (a fact Salient also hid from its potential investors).

50.   Mali also secretly made presentations for Salient seeking investment from Anduril's own investors.  During these presentations, Mali made numerous false claims, including about Employee Defendants' work at Anduril, Salient's association with Anduril, and their own technology.  The Pitch Deck identified Yin, Mali, and Jenkins as Salient employees even though Yin and Jenkins were still Anduril employees on October 18, 2022, the date Pitch Deck was created.

51.   The Pitch Deck also placed Anduril's name and logo next to the statement that "Variations of the [Salient motor] Controller used in almost every flying product with almost 1 million cumulative miles of use."  This slide falsely suggests that Defendants had authority to use Anduril software or that Anduril was using Salient

software and suggests an affiliation between Salient and Anduril when none existed and Anduril never used the stolen Secret Optimized Code.

52.   The Pitch Deck also falsely claims that Mali "spearheaded the electrical design" of an unannounced Anduril product and had been selected for senior positions at Anduril.  In fact, Mali was a staff engineer.  His career prospects at Anduril were poor and did not "spearhead" or lead anything at Anduril.

53.   The Pitch Deck also falsely claims that Yin "help[ed] [Anduril] break into the UAS drone and counter drone markets."  In fact, Yin was a staff engineer and Anduril had already won more than $1 billion in UAS and counter-UAS contracts, before Yin came to Anduril.

54.   The Pitch Deck also falsely claims that Yin "has a patent on his sensorless control algorithm."  In fact, no patent has issued from the '916 Application and examination has not even begun.  Moreover, the '916 Application belongs to Anduril, not Yin or Salient.  No issued patents name Yin as an inventor.

55.   On September 21, 2022, while still Anduril employees, the Employee Defendants registered the domain name www.salientmotion.com, which now serves as Salient's website.

56.    Salient's website previously included the statement "We've been on the front lines at SpaceX and Anduril, wrestling with hardware that seemed to have a mind of its own.  Remember those 52-week lead times, those endless hours spent debugging instead of creating?  We remember them too.  Our hardware and software solutions are easy to use, reliable, and come with short lead times.  Because at Salient Motion, we believe that your time should be spent on building your system, not debugging ours."  This statement, coupled with Salient's launch immediately after Employee Defendants departed Anduril, constitutes an admission that Employee Defendants developed Salient's claimed technology at Anduril.

**F.    Employee Defendants and Salient Appropriate Anduril Intellectual Property**

COMPLAINT

1   57.   Mali departed Anduril on October 10, 2022.

2   58.   Yin departed Anduril on October 21, 2022.

3   59.   Jenkins departed Anduril on October 24, 2022.

4   60.   After departing Anduril, Employee Defendants and Salient lied about the

5   circumstances of their departure from Anduril in order to entice investment in Salient

6   and recruit Anduril's employees to join Salient.

7   61.   The Employee Defendants incorporated Salient on or about October 3,

8   2022.

9   62.   The Employee Defendants intended for Salient to compete with Anduril.

10   Salient's website previously stated that the company was "[r]eimagining the American

11   defense and aerospace supply chain" and "enabling the next generation of Defense."[1]

12   The Pitch Deck also states that there are "countless opportunities for our technology"

13   in the "Defense/Aerospace" sectors.  Anduril competes in the defense and aerospace

14   industries and in the creation of motor control software.

15   63.   Furthermore, Employee Defendants have been enabling additional Anduril

16   competitors by offering to sell them the Anduril Code (or products using the Anduril

17   Code) in order to compete against Anduril.

18   64.   The same month that he left Anduril, Yin copied the Secret Optimized

19   Code into the Salient's GitHub repository.

20   65.   In January 2023, Yin assigned the '916 Application to Salient.

21   66.   Since October 2022, Salient and Employee Defendants have continued to

22   create derivative versions of Salient's code using the stolen Secret Optimized Code.

23   67.   In November 2022, Anduril notified Defendants that Anduril suspected

24   that they had violated their contractual and other legal obligations to Anduril.

25   68.   In response to Anduril's notification, Defendants denied any wrongdoing.

26   Nevertheless, on December 12, 2022, Anduril and all Defendants signed a Letter of

27   Understanding ("LOU").  A true and correct copy of the LOU is attached as Exhibit H.

28

---

[1] https://web.archive.org/web/20230308025659/https://www.salientmotion.com/

COMPLAINT

Among other things, the LOU provided:

> [Defendants] have not retained any confidential or proprietary materials or information, including but not limited to source code, from their employment with Anduril.

> [Defendants] do not possess any source code developed or owned by Anduril. This includes, among other things, any source code written, developed, or acquired by Former Employees in their capacity or otherwise during their time as Anduril employees.

> [Defendants] are not currently using, and will not use in the future, any source code developed or owned by Anduril, whether for Salient Motion or for any other venture.

> [Defendants] may use source code that was developed by Former Employees prior to their employment with Anduril, but such use does not extend to any improvements or other modifications that were made to that source code during the time that any Former Employee was employed at Anduril.

> [Defendants] will, upon signing this Letter of Understanding, promptly provide a platform on which a third-party reviewer selected by Anduril (and subject to a non-disclosure agreement) may review the relevant code. Further, if new or currently unknown information arises in the twelve (12) months following the signing of this Letter of Understanding, Anduril may, based on a good faith interpretation of this new information, request that Signees provide further relevant code for third-party review.

15

[Defendants] will not represent to potential investors, partners, or any other person or entity that their source code was developed or run on any Anduril products or systems. Nor will Signees represent that their code or products have been validated, tested, or developed by Anduril.

[Defendants] will not use Anduril's name, logo, or other intellectual property to suggest any relationship between themselves and Anduril, without the prior written consent of Anduril's Chief Legal Officer. This does not preclude the Former Employees from stating that they previously worked at Anduril.

69.     After agreeing to the LOU, Salient made available its GitHub repository to a third party for inspection and comparison with Anduril Code.  That inspection confirmed that Yin created the Secret Optimized Code and provided it to Salient, and that, contrary to Defendants' representations, Salient continues to possess and use Anduril Code.  By, entering the LOU, using the Anduril Code, and continuing to receive the services of the Employee Defendants, among other things, Salient ratified and accepted the benefits of the Employee Defendants' unlawful actions prior to Salient's incorporation.

70.     Jenkins and Mali were aware of Yin's scheme and assisted him in it, including by soliciting investment for Salient and concealing Salient's and Yin's wrongdoing in the LOU.

## V.     CAUSES OF ACTION

### COUNT I

**Misappropriation of Trade Secrets pursuant to
Defend Trade Secrets Act 18 U.S.C. § 1836 *et seq*.
(<u>Against All Defendants</u>)**

71.     Anduril incorporates by reference and realleges all of the foregoing

16

paragraphs of this Complaint as if fully set forth herein.

72.     The Anduril Code is a trade secret owned by Anduril.

73.     Anduril derives independent economic value from Anduril's trade secrets not being known to the public or other persons who could obtain economic value from their disclosure or use.

74.     Anduril's trade secrets are subject to efforts that are reasonable under the circumstances to maintain their secrecy.

75.     Employee Defendants misappropriated Anduril's trade secrets by, among other things, transferring Anduril Code and other trade secrets to Salient.

76.     Salient misappropriated Anduril's trade secrets by, among other things, using Anduril Code as its own.

77.     Employee Defendants had a duty to maintain the confidentiality of Anduril trade secrets, including the Anduril Code, by virtue of 1) their duty of loyalty as employees under California law, 2) the Employment Agreements, and 3) the PIIAs.

78.     Salient is and was aware of Employee Defendant's duties to Anduril because the Employee Defendants are Salient officers.

79.     Defendants' misappropriation has caused and continues to cause Anduril economic and irreparable injury, including the risk of disclosure of Anduril Code, denying Anduril the use and benefit of the Secret Optimized Code, and the creation of a potential competitor.

80.     Salient's misappropriation is willful and malicious and thereby entitles Anduril to an award of exemplary damages.

81.     As against Salient, Anduril seeks all available remedies.

82.     As against Employee Defendants, Anduril seeks only injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

//

//

17

COMPLAINT

## COUNT II

### Misappropriation of Trade Secrets
### California Uniform Trade Secrets Act – California Civil Code § 3426, *et seq.*
### (<u>Against All Defendants</u>)

83.   Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

84.   The Anduril Code is a trade secret owned by Anduril.

85.   Anduril derives independent economic value from Anduril's trade secrets not being known to the public or other persons who could obtain economic value from their disclosure or use.

86.   Anduril's trade secrets are subject to efforts that are reasonable under the circumstances to maintain their secrecy.

87.   Employee Defendants misappropriated Anduril's trade secrets by, among other things, transferring Anduril Code and other trade secrets to Salient.

88.   Salient misappropriated Anduril's trade secrets by, among other things, using Anduril Code as its own.

89.   Employee Defendants had a duty to maintain the confidentiality of Anduril trade secrets, including the Anduril Code by virtue of 1) their duty of loyalty as employees under California law, 2) the Employment Agreements, and 3) the PIIAs.

90.   Salient is and was aware of Employee Defendant's duties to Anduril because Employee Defendants are Salient officers.

91.   Defendants' misappropriation has caused and continues to cause Anduril economic and irreparable injury, including the risk of disclosure of Anduril Code, denying Anduril the use and benefit of the Secret Optimized Code, and the creation of a potential competitor.

92.   Salient's misappropriation is willful and malicious and thereby entitles Anduril to an award of exemplary damages.

93.   As against Salient, Anduril seeks all available remedies.

94.   As against Employee Defendants, Anduril seeks only injunctive relief

18

COMPLAINT

1   related to the improper use, disclosure, or misappropriation of its proprietary,
2   confidential or trade secret information.

3                                   **COUNT III**

4                        **Misappropriation of Trade Secrets**
    **Delaware Uniform Trade Secrets Act – 6 Del. C. § 2001 *et seq.***
5                          **(Against All Defendants)**

6        95.    Anduril incorporates by reference and realleges all of the foregoing
7   paragraphs of this Complaint as if fully set forth herein.

8        96.    The Anduril Code is a trade secret owned by Anduril.

9        97.    Anduril derives independent economic value from Anduril's trade secrets
10  not being known to the public or other persons who could obtain economic value from
11  their disclosure or use.

12       98.    Anduril's trade secrets are subject to efforts that are reasonable under the
13  circumstances to maintain their secrecy.

14       99.    Employee Defendants misappropriated Anduril's trade secrets by, among
15  other things, transferring Anduril Code and other trade secrets to Salient.

16       100.   Salient misappropriated Anduril's trade secrets by, among other things,
17  using Anduril Code as its own.

18       101.   Employee Defendants had a duty to maintain the confidentiality of Anduril
19  trade secrets, including the Anduril Code by virtue of 1) their duty of loyalty as
20  employees under California law, 2) the Employment Agreements, and 3) the PIIAs.

21       102.   Salient is and was aware of Employee Defendant's duties to Anduril
22  because Employee Defendants are Salient officers.

23       103.   Defendants' misappropriation has caused and continues to cause Anduril
24  economic and irreparable injury, including the risk of disclosure of Anduril Code,
25  denying Anduril the use and benefit of the Secret Optimized Code, and the creation of
26  a potential competitor.

27       104.   Salient's misappropriation is willful and malicious and thereby entitles
28  Anduril to an award of exemplary damages.

1    105.   As against Salient, Anduril seeks all available remedies.

2    106.   As against Employee Defendants, Anduril seeks only injunctive relief
3    related to the improper use, disclosure, or misappropriation of its proprietary,
4    confidential or trade secret information.

5                                **COUNT IV**

6              **Breach of Written Contract – Employment Agreements**
7                        **(<u>Against Employee Defendants</u>)**

8    107.   Anduril incorporates by reference and realleges all of the foregoing
9    paragraphs of this Complaint as if fully set forth herein.

10   108.   The Employment Agreements signed by Employee Defendants and
11   Anduril are valid enforceable contracts.

12   109.   Anduril has duly performed all conditions, covenants, and promises
13   required on its part to be performed pursuant to the Employment Agreements.

14   110.   Employee Defendants have breached their contractual obligations to
15   Anduril in the Employment Agreements to not "engage in any other employment,
16   consulting or other business activity that would create a conflict of interest with
17   Anduril."  Among other things, Employee Defendants planned to and did steal the
18   Anduril Code, sought or assisted in the seeking of investment for Salient while they
19   were Anduril employees, created the Salient website, created Salient, allowed
20   themselves to be held out as Salient employees while they were Anduril employees, and
21   encouraged each other to leave Anduril for Salient.

22   111.   Yin breached his representation in the Employment Agreements by
23   "confirm[ing] to Anduril that [Yin] ha[d] no contractual commitments or other legal
24   obligations that would interfere with or prohibit [him] from fully performing [his] duties
25   for Anduril."  In fact, Yin had entered the Motor Controller NDA.

26   112.   Yin further breached the Employment Agreements by filing the '545
27   Application and '916 Application in his own name.

28   113.   As against Salient, Anduril seeks all available remedies.

114.   Defendants' unlawful conduct has caused and continues to cause Anduril economic and irreparable injury, including the risk of disclosure of Anduril Code, denying Anduril the use and benefit of the Secret Optimized Code, and the creation of a potential competitor.

115.   As against Employee Defendants, Anduril seeks only injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

## COUNT V

### Breach of Written Contract – PIIAs
### (Against Employee Defendants)

116.   Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

117.   The PIIAs signed by Employee Defendants and Anduril are valid enforceable contracts.

118.   Anduril has duly performed all conditions, covenants, and promises required on its part to be performed pursuant to the PIIAs.

119.   Employee Defendants have breached Paragraph 4 of the PIIA, by among other things, disclosing Anduril confidential information, including Anduril Code, to Salient.

120.   Employee Defendants have breached Paragraph 5 of the PIIA, by among other things encouraging each other to leave Anduril to form Salient.

121.   Employee Defendants have breached Paragraphs 1 and 6 of the PIIA. Among other things, Employee Defendants planned to and did steal the Anduril Code, sought or assisted in the seeking of investment for Salient while they were Anduril employees, created the Salient website, created Salient, allowed themselves to be held out as Salient employees while they were Anduril employees, and encouraged each other to leave Anduril for Salient.

122.   Yin breached Paragraph 1 of the PIIA by failing to disclose the Motor

COMPLAINT

Controller NDA.

123.   Yin further breach Paragraphs 2 and 6 of the PIIA by filing the '545 Application and '916 Application in his own name.

124.   Defendants' unlawful conduct has caused and continues to cause Anduril economic and irreparable injury, including the risk of disclosure of Anduril Code, denying Anduril the use and benefit of the Secret Optimized Code, and the creation of a potential competitor.

125.   As against Employee Defendants, Anduril seeks only injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

### COUNT VI

### Breach of Written Contract -- LOU
### (Against All Defendants)

126.   Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

127.   The LOU signed by Defendants and Anduril is a valid enforceable contract.

128.   Anduril has duly performed all conditions, covenants, and promises required on its part to be performed pursuant to the LOU.

129.   Defendants breached the LOU, because the statements in paragraphs 1-3 of Defendant's representations are and were false.

130.   Defendants breached the LOU, because they continue to use the Anduril Code.

131.   Defendants' unlawful conduct has caused and continues to cause Anduril economic and irreparable injury, including the risk of disclosure of Anduril Code, denying Anduril the use and benefit of the Secret Optimized Code, and the creation of a potential competitor.

132.   As against Salient, Anduril seeks all available remedies.

COMPLAINT

133.   As against Employee Defendants, Anduril seeks only injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

## COUNT VII

### Breach of Employee's Duty of Loyalty under California Law
### (Against Employee Defendants)

134.   Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

135.   Employee Defendants had a duty of loyalty to Anduril as employees under California law.

136.   Employee Defendants breached their duty as employees by taking actions competitive with and adverse to Anduril during their Anduril employment, including, among other things, withholding the Secret Optimized Code from Anduril, seeking of investment for Salient while they were Anduril employees, claiming a false affiliation between Anduril and Salient, creating the Salient website, allowing themselves to be held out as Salient employees while they were Anduril employees, and (in the case of Yin) assigning the '916 Application to Salient.

137.   Defendants' unlawful conduct has caused and continues to cause Anduril economic and irreparable injury, including the risk of disclosure of Anduril Code, denying Anduril the use and benefit of the Secret Optimized Code, and the creation of a potential competitor.

138.   As against Employee Defendants, Anduril seeks only injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

## COUNT VIII

### Aiding and Abetting Employee Defendants' Breach of Employee's Duty of Loyalty under California Law
### (Against Salient)

139.   Anduril incorporates by reference and realleges all of the foregoing

23

COMPLAINT

paragraphs of this Complaint as if fully set forth herein.

140.   Employee Defendants had a duty of loyalty to Anduril as employees under California law.

141.   Salient is and was aware of Employee Defendant's duties to Anduril because Employee Defendants are Salient officers.

142.   Employee Defendants breached their duty as employees by taking actions competitive with and adverse to Anduril during their Anduril employment, including, among other things, withholding from Anduril the Secret Optimized Code, seeking of investment for Salient while they were Anduril employees, claiming a false affiliation between Anduril and Salient, creating the Salient website, allowing themselves to be held out as Salient employees while they were Anduril employees, and (in the case of Yin) pursuing the '916 Application.

143.   Salient and its promoters aided and abetted Employee Defendants' breach by, among other things, offering Employee Defendants employment and compensation after their departure from Anduril as consideration for their tortious actions, claiming a false affiliation between Anduril and Salient, accepting the stolen Anduril Code, accepting assignment of the '916 Application, and accepting the Salient website.

144.   Salient ratified and accepted the benefit of its promoters' tortious conduct by, among other things accepting Employee Defendants services as officers and employees, accepting assignment of the '916 Application, using the Salient website, using the Anduril Code, and signing the LOU.

145.   The departure of multiple employees as a group to start a competing enterprise which seeks investment from Anduril investors and falsely suggests affiliation with Anduril has harmed and will continue to harm Anduril.

146.   As a direct and proximate result of Salient's and its promoters' actions, Anduril has incurred and continues to incur damages and irreparable injury, including without limitation, the loss of sales and profits it would have earned but for Salient's actions, exposure of its trade secrets, and damage to Anduril's reputation among

potential and existing customers, business partners, investors, and in the industry in general.

147.   As a direct and proximate result of Salient's and its promoters' actions, Salient has been unjustly enriched, including by its receipt of the Secret Optimized Code, receiving investment on the basis of Employee Defendants' false claims, and receiving assignment of the '916 Application.

## COUNT IX

**False Association or Endorsement pursuant to Lanham Act, 15 U.S.C. §1125(a), *et seq.*
(<u>Against Salient</u>)**

148.   Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

149.   Anduril is one of United States' most recognized military technology companies known for developing innovative hardware and software applications for surveillance and defense systems for law enforcement, the U.S. military, and other U.S. or allied agencies.

150.   Salient uses Anduril's name and logo in order to attract customers and/or investors for its own benefit.

151.   Salient makes false representation regarding its relationship with Anduril to third parties in order to attract customers and/or investors for its own benefit.

152.   Salient knew or should have known that its unauthorized use and association with Anduril's identity was likely to cause confusion or mistake by the public regarding whether Anduril has endorsed, is affiliated, connected, or associated with Salient.

153.   As result of Salient's unlawful conduct, Anduril has suffered damages and will continue to suffer damages.

154.   As result of Salient's violation of the unlawful conduct, Salient has obtained profits and investments.

155.   Salient's causing of confusion as to affiliation between Anduril and Salient

is willful.

156.    Salient's unlawful conduct has caused and continues to cause Anduril economic and irreparable injury, including confusion among its investors and potential customers.

157.    Anduril is further entitled to its attorneys' fees and full costs pursuant to 15 U.S.C. §1117, and prejudgment interest according to law.

## COUNT X

**California Unfair Business Practices pursuant to Cal. BPC Code § 17200, *et seq.*<br>(Against Salient)**

158.    Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

159.    Anduril is one of United States' most recognized military technology companies known for developing innovative hardware and software applications for surveillance and defense systems for law enforcement, the U.S. military, and other U.S. or allied agencies.

160.    Salient uses Anduril's name and logo in order to attract customers and/or investors for its own benefit.

161.    Salient makes false representation regarding its relationship with Anduril to third parties in order to attract customers and/or investors for its own benefit.

162.    Salient knew or should have known that its unauthorized use and association with Anduril's identity was likely to cause confusion or mistake by the public regarding whether Anduril has endorsed, is affiliated, connected, or associated with Salient.

## COUNT XI

**Delaware Unfair Business Practices pursuant 6 Del. C. § 2531 *et seq.*<br>(Against Salient)**

163.    Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

COMPLAINT

164.   Anduril is one of United States' most recognized military technology companies, known for developing innovative hardware and software applications for surveillance and defense systems for law enforcement, the U.S. military, and other U.S. or allied agencies.

165.   Salient uses Anduril's name and logo in order to attract customers and/or investors for its own benefit.

166.   Salient makes false representation regarding its relationship with Anduril to third parties in order to attract customers and/or investors for its own benefit.

167.   Salient knew or should have known that its unauthorized use and association with Anduril's identity was likely to cause confusion or mistake by the public regarding whether Anduril has endorsed, is affiliated, connected, or associated with Salient.

168.   As result of Salient's unlawful conduct, Anduril has suffered damages and will continue to suffer damages.

169.   As result of Salient's violation of the unlawful conduct, Salient has obtained profits and investments.

170.   Salient's causing of confusion as to affiliation between Anduril and Salient is willful.

171.   Salient's unlawful conduct has caused and continues to cause Anduril economic and irreparable injury, including confusion among its investors and potential customers.

### COUNT XII

### Violation of the Digital Millennium Copyright Act 17 U.S.C. § 1201
### <u>(Against Yin and Salient)</u>

172.   Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

173.   Anduril maintains numerous technological measures to control access to its source code, including requiring credentials to access systems containing Anduril's

code.

174.   Yin repeatedly circumvented these technological measures by, among other things, writing the Anduril Code outside of Anduril's systems so that he could easily and without detection use the code for his own purposes.

175.   Yin was acting as Salient's agent and/or a Salient promoter when he circumvented Anduril's technological measures to control access to its source code.

176.   Yin's circumvention is ongoing, because he and Salient continue to develop derivative works of the Anduril Code as a result of his circumvention.

177.   Salient ratified and accepted the benefit of Yin's actions, by among other things, accepting the stolen Anduril Code and signing the LOU.

178.   Thus, as a direct and proximate result of Yin's and Salient's wrongful conduct, Anduril has been substantially and irreparably harmed in an amount not readily capable of determination; unless restrained and enjoined by this Court, Salient will cause further irreparable injury, whereupon Anduril is entitled to injunctive relief enjoining Yin, and all persons acting in concert or participation with it, from engaging in any further infringement of Anduril's copyrighted source code.

179.   As against Yin, Anduril seeks only seek injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

## COUNT XIII

### Contributory Violation of the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. § 1201
### (Against Mali, Jenkins, and Salient)

180.   Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

181.   Anduril maintains numerous technological measures to control access to its source code, including requiring credentials to access systems containing Anduril's code.

182.   Yin repeatedly circumvented these technological measures by, among

COMPLAINT

other things, writing the Anduril Code outside of Anduril's systems so that he could easily and without detection use the code for his own purposes.

183.  Yin's circumvention is ongoing, because he and Salient continue to develop derivative works of the Anduril Code as a result of his circumvention and continues to evade Anduril's technological measures by accessing the Anduril Code outside Anduril's systems.

184.  Salient and/or its promoters (i.e., Employee Defendants) encouraged Yin's circumvention so that they would benefit by receiving access to Anduril Code without detection.  For example, Salient offered Yin employment and Employee Defendants created Salient and sought investment for Salient to be able to profit from Yin's violation of the DMCA.

185.  Salient received and has kept the benefit of Yin's circumvention and ratified his conduct by accepting the stolen Anduril Code and signing the LOU.

186.  As a direct and proximate result of its wrongful conduct, Salient has obtained benefits, including, but not limited to, profits and other such payments to which Salient was not otherwise entitled.

187.  Thus, as a direct and proximate result of Salient's wrongful conduct, Anduril has been substantially and irreparably harmed in an amount not readily capable of determination; unless restrained and enjoined by this Court, Defendants will cause further irreparable injury, whereupon Anduril is entitled to injunctive relief enjoining defendant Salient, and all persons acting in concert or participation with it, from engaging in any further infringement of Anduril's copyrighted source code.

188.  Anduril is further entitled to recover all damages, attorney's fees, and other remedies pursuant to 17 U.S.C. § 1203.

189.  As against Salient, Anduril seeks all available remedies.

190.  As against Employee Defendants, Anduril seeks only injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

1

2

3

## COUNT XIV

### Conversion
### (Against Yin and Salient)

4
5
191.    Anduril incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

6
7
8
192.    Anduril has a property interest in the Anduril Code and the '916 Application by virtue of Yin's status as Anduril employee and the PIIA and Employment Agreement.

9
10
11
193.    Anduril's property interest includes at least all right, title and interest in all intellectual property made, conceived reduced to practice, in whole or in part, by Yin during the term of Yin's employment with Anduril ("Inventions").

12
13
14
194.    Yin and Salient wrongfully exercised dominion over the Anduril Code and other Inventions by copying it into Salient's GitHub repository and providing other Inventions to Salient.

15
16
195.    Yin wrongfully exercised dominion over the '916 Application by filing it, prosecuting it, and assigning it to Salient.

17
18
196.    Salient wrongfully exercised dominion over the Anduril Code and other Inventions by receiving them from Yin.

19
20
197.    Salient wrongfully exercised dominion over the '916 Application by accepting Yin's assignment and prosecuting it.

21
22
23
24
198.    Anduril has been or will be damaged by Yin and Salient's conversion by among other things, being deprived of the use and benefit of the Anduril Code, the inability to register its copyright in the Anduril Code, loss of control over the '916 Application, and the use of Inventions by Anduril's competitors.

25
199.    As against Salient, Anduril seeks all available remedies.

26
27
28
200.    As against Employee Defendants, Anduril seeks only injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

COMPLAINT

## COUNT XV

### Aiding and Abetting Conversion
### (Against Mali and Jenkins)

201.    Anduril incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

202.    Anduril has a property interest in the Anduril Code and the '916 Application by virtue of Yin's status as Anduril employee and the PIIA and Employment Agreement.

203.    Anduril's property interest includes at least all right, title and interest in all intellectual property made, conceived reduced to practice, in whole or in part, by Yin during the term of Yin's employment with Anduril ("Inventions").

204.    Yin and Salient wrongfully exercised dominion over the Anduril Code and other Inventions by copying it into Salient's GitHub repository and providing other Inventions to Salient.

205.    Yin wrongfully exercised dominion over the '916 Application by filing it, prosecuting it, and assigning it to Salient.

206.    Salient wrongfully exercised dominion over the Anduril Code and other Inventions by receiving them from Yin.

207.    Salient wrongfully exercised dominion over the '916 Application by accepting Yin's assignment and prosecuting it.

208.    Mali and Jenkins aided and abetted Yin's and Salient's conversion by creating the Salient corporate entity for the purpose of using the converted property and making use of the converted property as Salient Officers.

209.    Anduril has been or will be damaged by Yin and Salient's conversion and Mali's and Jenkin's support for the conversion by among other things, being deprived of the use and benefit of the Anduril Code, the inability to register its copyright in the Anduril Code, loss of control over the '916 Application, and the use of Inventions by Anduril's competitors.

31

COMPLAINT

210. As against Salient, Anduril seeks all available remedies.

211. As against Employee Defendants, Anduril seeks only injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

## COUNT XVI

### Injunction and Declaratory Judgment of Ownership of the Anduril Code, '916 Application, Other Patents Claiming Priority Therefrom
### (Against Salient)

212. Anduril incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

213. Pursuant to 28 U.S.C. § 2201(a), the Court may declare the rights, status, or legal relations of interested parties to a contract when a controversy exists between the parties regarding the contract.

214. Under the PIIA, Yin agreed that Anduril shall own all right, title and interest in all Inventions.

215. Under the PIIA, Yin agreed to make all assignments necessary to transfer ownership of the Inventions to Anduril. Yin also agreed to assist Anduril to further evidence, record, and perfect such assignments, and to perfect, obtain, maintain, enforce, and defend any rights specified to be so owned or assigned.

216. Under the PIIA, Yin is obligated to promptly disclose to Anduril of any Inventions.

217. In addition, under the Employment Agreements Yin agreed to not engage in any other employment, consulting or other business activity that would create a conflict of interest with Anduril.

218. The PIIA and Employment Agreements are valid and legally binding contracts between Yin and Anduril.

219. Anduril has fully performed its contractual obligations under the PIIA and Employment Agreements. The Anduril Code relates to Anduril's actual and demonstrably anticipated business and was within the scope of Yin's professional

COMPLAINT

responsibilities at Anduril.

220.   The Anduril Code was developed in whole or in part while Yin was an Anduril employee.  Accordingly, under Paragraph 2 of the PIIA, the Anduril Code is an Invention and Yin was obligated to assign any rights in the '916 Application to Anduril.

221.   Yin's transfer of the Anduril Code to Salient was a breach of the Employment Agreements and PIIA paragraph 6, because it is an action "competitive with the business or demonstrably anticipated business" of Anduril, "conflict[s] with the [Anduril's] interests" and may "cause a disruption of [Anduril's] business operations" if Anduril is unable to use the code and/or its competitor is able to use the code.

222.   Yin had an obligation to disclose and transfer the Anduril Code to Anduril and not transfer it to Salient by virtue of his duty of loyalty under California law, because withholding the code from Anduril and transferring it to Anduril's competitor was contrary to Anduril's business interests.

223.   The '916 Application relates to Anduril's actual and demonstrably anticipated business and was within the scope of Yin's professional responsibilities at Anduril.

224.   The '916 Application was developed in part while Yin was an Anduril employee.  Accordingly, under Paragraph 2 of the PIIA, the '916 Application is an Invention and Yin was obligated to assign any rights in the '916 Application to Anduril.

225.   Yin's filing of the '916 Application was a breach of the Employment Agreements and PIIA paragraph 6, because it is an action "competitive with the business or demonstrably anticipated business" of Anduril, "conflict[s] with the [Anduril's] interests" and may "cause a disruption of [Anduril's] business operations" if Anduril is unable to practice any technology claimed in a patent that claims priority from the '916 Application.

226.   In addition, Yin had an obligation to disclose to Anduril and not pursue the '916 Application by virtue of his duty of loyalty under California law, because pursuing

the Application was contrary to Anduril's business interests.

227.   Salient took possession of the Anduril Code and assignment of the '916 Application with full knowledge of Anduril's interest in them.

228.   As a result of the PIIA, Employment Agreements, and Yin's duty under California law, Anduril is the rightful and sole owner of the Anduril Code, derivative works of the Anduril Code, '916 Application, any patents or applications claiming priority from the '916 Application, and any and all other Inventions.

229.   Neither Salient, Yin, nor any individual or company working on their behalf, was permitted to transfer Anduril's interest in the Anduril Code or other Inventions, because legal title to those Inventions belonged to Anduril.  Transfer of the Anduril Code and any other Inventions to Salient was unlawful, null, and void.

230.   Neither Salient, Yin, nor any individual or company working on their behalf, was permitted to file patent applications based on Inventions and assign away interest in the '916 Application because the legal title to those Inventions belonged to Anduril.  The assignment to Salient of the '916 Application was unlawful. Accordingly, any assignment of the '916 Application and/or other Inventions to entities other than Anduril are null and void.

231.   There exists an actual, immediate, real, and substantial controversy between the parties having adverse legal interests regarding the ownership of all rights, title, and interest to the Anduril Code, the '916 Application and/or other Inventions, including any divisional, renewal, substitute, continuation, continuation-in-part, reissue, and reexamination applications claiming priority from '916 Application or other Inventions.

232.   The Court should declare that Anduril is the owner of, and order Salient to convey to Anduril, all right, title, and interest in the Anduril Code, the '916 Application, and any and all other Inventions.

233.   The Court should order a full accounting of all Inventions.

234.   The Court should order Salient and Yin to convey to Anduril a copy of the

34

Anduril Code and any other Inventions.

235.   The Court should order Salient and Yin to destroy all copies of the Anduril Code and any other Inventions after they have been conveyed to Anduril.

236.   The Court should order that Yin, Salient, Employee Defendants and any successors in interested are barred from pursuing any patents claiming priority from the '916 Application or other patent applications in the field of motor controller technology.

237.   Further, Anduril has suffered irreparable harm for which it is entitled to preliminary and permanent injunctive relief.

## VI.   REQUEST FOR RELIEF

WHEREFORE, Anduril respectfully requests the following:|

1.   As against Salient, Anduril seeks all remedies available at law or equity, including actual damages, punitive damages, exemplary damages, attorney's fees, restitution, disgorgement of profits and injunctive and declaratory relief.

2.   As against Employee Defendants, notwithstanding anything else in this Complaint to the contrary, Anduril seeks only injunctive relief related to the improper use, disclosure, or misappropriation of its proprietary, confidential or trade secret information.

3.   For entry of judgment in Anduril's favor that:

   a. Defendants wrongfully misappropriated or used Anduril's Trade Secrets;

   b. Defendants willfully and directly and/or contributorily infringed Anduril's copyright;

   c. Defendants willfully and directly and/or contributorily violated the DMCA;

   d. Employee Defendants breached the Employment Agreements and PIIAs;

   e. Defendants breached the LOU;

35

COMPLAINT

f.  Salient tortuously interfered with the Employment Agreements and PIIAs;

g.  Employee Defendants breached their duty of loyalty to Anduril;

h.  Salient aided and abetted Employee Defendants breach of their duty of loyalty to Anduril;

i.  Anduril owns all right, title, and interest in the '916 Application, the Anduril Code, and/or other Inventions;

j.  Defendants have no right whatsoever in the '916 Application, the Anduril Code, and/or other Inventions;

k.  In the alternative, that Employee Defendants must abandon and disclaim any rights in the '916 Application and/or other Inventions;

4.  For entry of a preliminary injunction and permanent injunction:

a.  Ordering Defendants to refrain from accessing or using Anduril's trade secrets;

b.  Ordering Defendants to destroy any copies or representations of Anduril's trade secrets in their possession, including the Anduril Code, and certify that destruction to the Court;

c.  Ordering an accounting of all copies of the Anduril Code;

d.  Ordering Defendants to provide to Anduril all copies of the Anduril Code and derivative works thereof, including all right, title, and license thereto;

e.  Ordering Defendants to cease all work in the field of motor controllers for five years;

f.  Ordering Defendants to forever cease prosecuting the '916 Application and refrain from assisting in the prosecution of any patents anywhere in the world relating to motor controller technology;

g.  Ordering Defendants to identify all circumstances in which they have provided Anduril's trade secrets to third-parties;

36

h. Ordering Defendants to refrain from making false representations regarding its relationship with Anduril;

i. Ordering Salient to assign ownership of the '916 application and/or other Inventions to Anduril;

j. Ordering Salient to convey to Anduril a perpetual, world-wide, royalty-free, freely assignable, and freely sub licensable license of the '916 application and/or other Inventions;

k. Ordering Salient to abandon and disclaim the '916 application and/or other Inventions;

5.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Anduril hereby demands a jury trial on all issues and claims so triable.

DATED: September 6, 2023                    Respectfully submitted,
                                            MCKOOL SMITH, P.C.


                                            By: */s/ Makenna Miller*

                                                Makenna Miller
                                                Nicholas Matich
                                                Gary Cruciani

                                                Attorneys for Plaintiff

COMPLAINT