SINGER CASHMAN LLP
  Benjamin L. Singer (SBN 264295)
  bsinger@singercashman.com
  Evan N. Budaj (SBN 271213)
  ebudaj@singercashman.com
505 Montgomery Street, Suite 1100
San Francisco, CA  94111
Telephone:   (415) 500-6080
Facsimile:    (415) 500-6080

*Attorneys for Defendants Salient Motion
Inc., Aidan Jenkins, and Vishaal Mali*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDURIL INDUSTRIES, LLC, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SALIENT MOTION INC., a Delaware corporation, KAI YIN, an individual, AIDAN JENKINS, an individual, and VISHAAL MALI, an individual,<br><br>Defendants. | CASE NO. 8:23-CV-1650-JVS-KES<br><br>**DEFENDANT SALIENT MOTION INC.'S COUNTERCLAIMS** |

Pursuant to Federal Rule of Civil Procedure 13, Defendant Salient Motion Inc. ("Salient") hereby asserts the following counterclaims against Plaintiff Anduril Industries, LLC ("Plaintiff" or "Anduril").

## INTRODUCTION

1. Salient sells advanced motor controllers to the aerospace and defense industries, among others. Founded in late 2022, Salient is a tremendously successful early-stage company. Its products have been well received in the marketplace and it has succeeded in raising multiple rounds of funding.

2. As a graduate student, one of Salient's co-founders, Defendant Kai Yin ("Mr. Yin"), invented a motor control method that uses a motor's inherent saliency to accurately track the position of the motor's rotor at low-speed and standstill without the use of hardware sensors (the "Saliency Tracking Invention"). The Saliency Tracking Invention was a significant advance in the state of the art.

3. The Saliency Tracking Invention, which Salient owns by assignment, was conceived and reduced to practice well before any of Salient's founders ever worked at Anduril. In fact, before joining Anduril, Mr. Yin had already made a fully operational prototype of the Saliency Tracking Invention (hardware and software).

4. At least as of the time the Salient founders left Anduril's employment, Anduril had not tried and was not trying to develop saliency tracking technology and, as a result, possessed no saliency tracking trade secrets or other intellectual property.

5. Nevertheless, despite knowing better, Anduril's Complaint concocts a tall tale of a rogue employee writing secret optimized code to assert that Mr. Yin developed the Saliency Tracking Invention while employed by Anduril and using Anduril trade secrets. That is false.

6. Salient brings these counterclaims to clarify that it is the rightful and exclusive owner of both the Saliency Tracking Invention Mr. Yin developed before joining Anduril and assigned to Salient, as well as all code developed at Salient.

## NATURE OF THE ACTION

7.    Salient brings these Counterclaims pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.  An actual controversy exists as to all counterclaims within the jurisdiction of the federal courts.

8.    Salient's declaratory judgment counterclaims seek declaratory judgment that: (1) Salient is the rightful owner of the Saliency Tracking Invention, including without limitation (a) the embodying source code Mr. Yin wrote as it existed before he joined Anduril; (b) the embodying source code Mr. Yin wrote as it existed when he departed Anduril; and (c) U.S. patent application no. 17/947,916 (the "'916 Application"); and (2) Salient is the rightful owner of all source code created at Salient.

## JURISDICTION

9.    This Court has subject matter jurisdiction over the Counterclaims under 28 U.S.C. §§ 1367(a), 2201, and 2202.

10.    This Court has personal jurisdiction over Anduril by virtue of its filing of the Complaint in this action.

## THE PARTIES

11.    Salient is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 3317 La Cienega Place, Los Angeles, California 90016.

12.    Defendant Aidan Jenkins ("Mr. Jenkins") is an individual residing in Los Angeles, California.

13.    Defendant Vishaal Mali ("Mr. Mali") is an individual residing in Los Angeles, California.

14.    Defendant Kai Yin ("Mr. Yin") is an individual residing, upon information and belief, in Irvine, California.

15.    Upon information and belief and according to the Complaint, Anduril is a corporation organized under the laws of the State of Delaware with its headquarters

and principal place of business at 1375 Sunflower Ave., Costa Mesa, California 92626. Its registered agent for service of process is Incorporating Services, Ltd., 3500 South DuPont Hwy., Dover, Delaware 19901.

## FACTUAL ALLEGATIONS

*Mr. Yin Develops Novel Saliency Tracking Method While a Student at ASU*

16.     Mr. Yin attended Arizona State University ("ASU") from 2017 to 2021, earning both a B.S. and M.S. in Computer Science.

17.     Mr. Yin's graduate studies at ASU focused on motor control.  He invented a sensorless method for accurately tracking the rotor position and speed of brushless direct current ("BLDC") and surface-mounted permanent magnet synchronous ("SPMS") motors at any speed, including standstill, by using a motor's saliency characteristics—the Saliency Tracking Invention.

18.     The Saliency Tracking Invention was a significant advance in the state of the art and allowed BLDC and SPMS motors to be effectively used for the first time in low-speed, high-torque applications like micromobility, robotics, and more.

19.     During his time at ASU, these motor types were becoming increasingly popular in two applications where Mr. Yin was an active hobbyist: robotics (*e.g.*, battlebots) and micromobility applications (*e.g.*, motorized skateboards).

20.     Properly controlling these motor types requires a sophisticated controller that can ascertain the position of the motor's rotor.  At the time, the preferred (and most widely adopted) control algorithm for these motor types was Field-Oriented Control ("FOC").  In FOC, the rotor position is estimated by measuring the back-electromotive force, a force created by the rotation of the motor's rotor and stator windings ("BEMF").

21.     However, the existing sensorless BEMF sensing methods worked well at medium to high speeds but performed poorly at low speeds and standstill (where there is little or no BEMF).  That weakness was particularly problematic in low-speed, high torque applications such as robotics and micromobility.

22.    Some systems that had to overcome this issue used hardware sensors to determine the rotor position at low-speed or standstill; however, these sensors introduce significant additional cost and points of failure.

23.    Through his work as a hobbyist, Mr. Yin developed a novel saliency tracking technique and method (the Saliency Tracking Invention) that was able to accurately determine rotor position at low-speed and standstill and could be combined with FOC.

24.    In January 2021, Mr. Yin began talking to ASU about his intent to pursue his saliency tracking work as a masters' thesis, and he developed a related abstract.

25.    By February 2021, Mr. Yin had reduced his Saliency Tracking Invention to practice, including developing and testing the novel method implemented in software and developing a working hardware prototype.

26.    From the time that Mr. Yin developed his working prototype in February 2021—months before he joined Anduril—through when he left Anduril's employment to co-found Salient, he did not make any material changes to the prototype's hardware or software and did not conceive any new inventions.

*Mr. Yin Works at Anduril for 18 Months*

27.    Mr. Yin worked at Anduril from May 2021 until October of 2022.

28.    When Mr. Yin joined Anduril, he signed an offer letter and PIIA.  Neither document purported to—nor did—give Anduril ownership of any inventions or code he developed before joining Anduril.

29.    Upon information and belief, at the time, Anduril had not developed any motor control methods or techniques and was instead strictly using third-party motor controllers.  Moreover, upon information and belief, the third-party motor controllers it was incorporating into its products did not utilize saliency tracking.

30.    Upon information and belief, at the time, Anduril had neither developed nor purchased any saliency tracking technology and possessed no saliency tracking trade secrets or other IP.

31.     Upon information and belief, none of the assignments Mr. Yin was given at Anduril related to saliency tracking.

32.     On September 7, 2021, Mr. Yin executed an Anduril PIPD, in which Mr. Yin was permitted to voluntarily disclose "personal intellectual property that [he intended] to use for or on behalf of Anduril."  *See* Dkt. No. 1-1, Exh. G.  The personal IP Mr. Yin disclosed in this PIPD did not relate to saliency tracking.  Rather, Mr. Yin granted Anduril a free license to FOC software he wrote while at ASU that implemented well-known techniques.  The PIPD confirms that, notwithstanding the free, non-exclusive license Mr. Yin granted to Anduril therein, "no rights of ownership or other intellectual property rights are waived, and [Mr. Yin] retain[ed] all rights to the disclosed personal intellectual property."  *Id.*

33.     At Anduril's direction, Mr. Yin then spent months modifying his FOC code to conform it to Anduril's code specifications.

34.      There is no such thing as the "Secret Optimized Code" referred to in Anduril's Complaint.  Mr. Yin did not write any secret code while at Anduril, much less a second version of other code written in response to directions given by Anduril.

35.     It appears that when the Complaint refers to "Secret Optimized Code," it is actually referring to the code Mr. Yin wrote before he joined Anduril in connection with developing the working prototype of the Saliency Tracking Invention.

36.     Anduril knows this code was developed before Mr. Yin joined Anduril and it knows or should know—because Salient permitted Anduril to inspect that code before this suit was filed—that Mr. Yin did not make any meaningful or material, much less inventive, changes to that code during his employment at Anduril.

*ASU Pursued Patent Protection for Mr. Yin's Saliency Tracking Invention*

37.     In April 2021, before joining Anduril, Mr. Yin submitted an invention disclosure form to ASU covering the Saliency Tracking Invention.

38.    On May 11, 2021, ASU informed Mr. Yin that, as a masters student, he was likely obligated to assign his ownership interest in his invention to the Arizona Board of Regents ("ABOR").

39.    On May 17, 2021 (the same day Mr. Yin joined Anduril), ASU informed Mr. Yin that ABOR would retain complete ownership of the Saliency Tracking Invention.

40.    On September 17, 2021, ASU's patent prosecution counsel filed the '545 Application, naming Mr. Yin as the sole inventor.

41.    Anduril was aware of the '545 Application and that Mr. Yin had previously developed software that practiced his novel Saliency Tracking Invention. Within a few weeks, Anduril's IP counsel contacted ASU to inquire about licensing the Saliency Tracking Invention and the embodying source code Mr. Yin wrote at ASU.

*ASU Assigns the Pending Provisional Application to Mr. Yin*

42.    In late July 2021, ASU informed Mr. Yin that it was no longer claiming ownership over the Saliency Tracking Invention.

43.    ASU assigned the '545 Application to Mr. Yin on September 16, 2022, and Mr. Yin filed the '916 Application a few days later.

44.    The '545 Application and the '916 Application are substantially identical. Minor modifications were made to the '545 Application specification before filing the '916 Application, all of which related to work Mr. Yin performed at ASU, long before joining Anduril; and none of which related to Anduril in any way.

45.    The inventions described and claimed in the '545 Application and '916 Application—*i.e.*, the Saliency Tracking Invention—were conceived and reduced to practice by Mr. Yin long before he joined Anduril.

//

//

//

*Messrs. Jenkins, Mali, and Yin Co-Found Salient*

46.    In October 2022, Mr. Yin assigned the Saliency Tracking Invention, including the '545 and '916 Applications and the embodying source code he wrote, to Salient.

47.    Upon its founding, Salient developed new software for the motor controllers it was developing and would later sell (the "Salient Code").  The Salient Code is the only proprietary code that has ever been used in a Salient product.

48.    No part of the Salient Code is derived, in whole or in part, from any Anduril confidential information, trade secret, or code.

49.    Salient has not used and does not use any Anduril confidential information, trade secrets, or code in its business.

## FIRST COUNTERCLAIM

*Declaratory Judgment (Saliency Tracking Invention)*

50.    Defendants re-allege and incorporate by reference the above paragraphs of these Counterclaims as though fully set forth herein.

51.    An actual case or controversy exists between Anduril and Defendants based on Anduril's allegations that "[t]here exists an actual, immediate, real, and substantial controversy between the parties having adverse legal interests regarding the ownership of all rights, title, and interest to the Anduril Code, the '916 Application and/or other Inventions" (Compl. ¶ 231), that "[t]he Court should declare that Anduril is the owner of, and order Salient to convey to Anduril, all right, title, and interest in the Anduril Code, the '916 Application, and any and all other Inventions" (Compl. ¶ 232), and "Anduril is the rightful and sole owner of the Anduril Code, derivative works of the Anduril Code, '916 Application, any patents or applications claiming priority from the '916 Application, and any and all other Inventions" (Compl. ¶ 228).

52.    Prior to joining Anduril and prior to his signing of the PIIA or Employment Agreement, Mr. Yin fully conceived and reduced to practice the Saliency Tracking Invention.

53.     Mr. Yin's substantive development of his embodying code was completed prior to his employment with Anduril and prior to his signing of the PIIA or his Employment Agreement.  As a result, Anduril has no ownership claim or rights in the pre-Anduril embodying code.

54.     The minor changes Mr. Yin made to the embodying source code during his employment at Anduril were neither meaningful nor material and do not constitute an "Invention" or other assignable intellectual property covered by the PIIA.  As a result, Anduril also has no ownership claim or rights in these changes.

55.     The '916 Application (and the provisional '545 Application to which it claims priority) relates solely to the Saliency Tracking Invention conceived and reduced to practice by Mr. Yin before he joined Anduril.  As a result, Anduril has no ownership claim or rights in either Application.

56.     Mr. Yin transferred all right, title, and interest in the Saliency Tracking Invention, including the '545 and '916 Applications and the embodying source code he wrote, to Salient in October 2022.

57.     Defendants therefore seek a declaration that Salient is the rightful and sole owner of the Saliency Tracking Invention, including (a) the embodying source code Mr. Yin wrote as it existed before he joined Anduril; (b) the embodying source code Mr. Yin wrote as it existed when he departed Anduril; and (c) the '916 Application.

## SECOND COUNTERCLAIM

*Declaratory Judgment (Salient Code)*

58.     Defendants re-allege and incorporate by reference the above paragraphs of these Counterclaims as though fully set forth herein.

59.     An actual case or controversy exists between Anduril and Defendants based on Anduril's allegations that "[s]ince October 2022, Salient and Employee Defendants have continued to create derivative versions of Salient's code using the stolen Secret Optimized Code" (Compl. ¶ 66), "[Mr. Yin] and Salient continue to develop derivative works of the Anduril Code" (Compl. ¶¶ 176, 183), and "Anduril is

the rightful and sole owner of … derivative works of the Anduril Code" (Compl. ¶ 228).

60.     The Salient Code was written at Salient without reference to any Anduril confidential information, trade secrets, or code.  As a result, Anduril does not have any ownership claim or rights in the Salient Code.

61.     Defendants therefore seek a declaration that Salient is the rightful and sole owner of the Salient Code.

## PRAYER FOR RELIEF

Defendants respectfully request that the Court enter judgment on these Counterclaims as follows:

1.     Declaratory judgment that Salient is the rightful owner of the Saliency Tracking Invention, including (a) the embodying source code Mr. Yin wrote as it existed before he joined Anduril; (b) the embodying source code Mr. Yin wrote as it existed when he departed Anduril; and (c) the '916 Application;

2.     Declaratory judgment that Salient is the rightful owner of the Salient Code;

3.     Awarding Defendants their costs and disbursements in this action; and

4.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Defendants hereby demand a jury trial as to all issues so triable.

Respectfully submitted,

Date:  December 15, 2023          SINGER CASHMAN LLP

By:   _/s/ Benjamin L. Singer_

Benjamin L. Singer
Evan Budaj

Attorneys for Defendant Salient Motion Inc.