UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-01650-JVS-KES                    Date    March 4, 2024

Title    Anduril Industries, Inc. v. Salient Motion Inc. et al.

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:    **[IN CHAMBERS] Order Regarding Motion to Dismiss [33]**

Before the Court is Defendants Salient Motion Inc. ("Salient"), Aidan Jenkins ("Jenkins"), Vishaal Mali ("Mali"), and Kai Yin's ("Yin") (Jenkins, Mali, and Yin collectively, "Employee Defendants") (all collectively, "Defendants") motion to dismiss. (Mot., Dkt. No. 33.)  Plaintiff Anduril Industries, LLC ("Anduril") opposed.  (Opp'n, Dkt. No. 37.)  Defendants replied.  (Reply, Dkt. No. 39.)

For the following reasons, the Court **GRANTS** in part the motion with respect to the Delaware misappropriation of trade secrets and unfair business practices claims and **DENIES** in part the motion with respect to all other claims.

## I. BACKGROUND

The following allegations come from Anduril's Complaint.  (Compl., Dkt. No. 1.)

Anduril was founded in 2017 and creates defense products, including "autonomous systems that support operations of the U.S. Department of Defense and U.S. Department of Homeland Security."  (Id. ¶ 19.)  As part of its business, Anduril develops computer software that "fuses data from various sensors into a single user interface," like "custom motor control software for, among other things, its autonomous vehicle products."  (Id. ¶ 20.)  Generally, motor control software sends and receives signals from the motor to facilitate "a smooth start up and shut down that avoids damage or unnecessary wear on the physical components."  (Id. ¶ 30.)

Anduril employs a variety of measures to safeguard the confidentiality of its trade

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-01650-JVS-KES                          Date    March 4, 2024

Title    Anduril Industries, Inc. v. Salient Motion Inc. et al.

secrets, including the following:

> requir[ing] employees and other parties with access to trade secret information to sign confidentiality agreements, limit[ing] access to computer code and other trade secrets on a need-to-know basis, maintain[ing] secure physical premises, mark[ing] documents containing confidential information, us[ing] software and other techniques to monitor for attempted exfiltration of confidential information from Anduril systems, and enforc[ing] a policy of requiring employees to write Anduril software code only in an access-controlled computing environment.

(Id. ¶ 22.)

Anduril requires new employees to sign an Employment Agreement, which states in part:

> During employment with Anduril, you will not engage in any other employment, consulting or other business activity that would create a conflict of interest with Anduril without the prior written consent of Anduril.  By signing this letter agreement, you confirm to Anduril that you have no contractual commitments or other legal obligations that would interfere with or prohibit you from fully performing your duties for Anduril.
>
> . . .
>
> Like all Anduril employees, as a condition of your employment with Anduril, you will be required to sign Anduril's standard Proprietary Information and Inventions Agreement, a copy of which will be provided upon request.

(Compl., Exs. A–C, Employment Agreement, Dkt. No. 1-1.)  Employees also sign Anduril's Proprietary Information and Inventions Agreement, which states:

> I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement or my employment with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-01650-JVS-KES                    Date    March 4, 2024

Title    Anduril Industries, Inc. v. Salient Motion Inc. et al.

Company.  I will not violate any agreement with or rights of any third party or,
except as expressly authorized by Company in writing hereafter, use or
disclose my own or any third party's confidential information or intellectual
property when acting within the scope of my employment or otherwise on
behalf of Company.  Further, I have not retained anything containing any
confidential information of a prior employer or other third party, whether or
not created by me.

Company shall own all right, title and interest (including patent rights,
copyrights, trade secret rights, mask work rights, sui generis database rights
and all other intellectual property rights of any sort throughout the world)
relating to any and all inventions (whether or not patentable), works of
authorship, mask works, designs, know-how, ideas and information made or
conceived or reduced to practice, in whole or in part, by me during the term of
my employment with Company to and only to the fullest extent allowed by
California Labor Code Section 2870 (which is attached as Appendix A)
(collectively "Inventions") and I will promptly disclose all Inventions to
Company.

. . .

I agree that all Inventions and all other business, technical and financial
information (including, without limitation, the identity of and information
relating to customers or employees) I develop, learn or obtain during the term
of my employment that relate to Company or the business or demonstrably
anticipated business of Company or that are received by or for Company in
confidence, constitute "Proprietary Information." I will hold in confidence and
not disclose or, except within the scope of my employment, use any Proprietary
Information.  However, I shall not be obligated under this paragraph with
respect to information I can document is or becomes readily publicly available
without restriction through no fault of mine.  Upon termination of my
employment, I will promptly return to Company all items containing or
embodying Proprietary Information (including all copies), except that I may
keep my personal copies of (I) my compensation records, (ii) materials
distributed to shareholders generally and (iii) this Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     8:23-cv-01650-JVS-KES                Date     March 4, 2024

Title        Anduril Industries, Inc. v. Salient Motion Inc. et al.

Until one year after the term of my employment, I will not encourage or solicit any employee or consultant of Company to leave Company for any reason (except for the bona fide firing of Company personnel within the scope of my employment).

I agree that during the term of my employment with Company (whether or not during business hours), I will not: (I) engage in any activity that is in any way competitive with the business or demonstrably anticipated business of Company; (ii) engage in any activity that would otherwise conflict with the Company's interests or cause a disruption of its business operations or prospects; and (iii) assist any other person or organization in competing or in preparing to compete with any business or demonstrably anticipated business of Company or to engage in any activity that would otherwise conflict with the Company's interests or cause a disruption of its business operations or prospects.

(Compl., Exs. D–F, Proprietary Information and Inventions Agreement, Dkt. No. 1-1.)

In November 2020, Yin "and three other parties entered a mutual non-disclosure agreement that prevented disclosure of information related to an 'Advanced Motor Controller'" ("Motor Controller NDA"). (Compl. ¶ 47.)

Mali's employment with Anduril began on November 2, 2020. (Id. ¶ 45.) Jenkins's employment began on February 22, 2021. (Id. ¶ 25.) Yin's employment began on May 17, 2021. (Id. ¶ 26.) Mali, Jenkins, and Yin each signed a "substantially similar offer letter and employment agreement prior to starting their work at Anduril," including the Proprietary Information and Inventions Agreement (Id. ¶¶ 27, 29.) The Motor Controller NDA remained in force during Yin's employment at Anduril and after he signed the Employment Agreements. (Id.)

One of the tasks Anduril hired Yin to do was "write motor control software (collectively all code developed by Yin during his time at Anduril is "Anduril Code")". (Id. ¶ 31.) In response to this assignment, Yin developed "two versions of the requested code, one he provided to Anduril ("Substandard Day Job Code"), and the other he developed secretly and outside Anduril's computing environment ("Secret Optimized Code")." (Id. ¶ 33.) Both sets of code performed the same task, but the Substandard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |
|---|---|---|---|

| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |
|---|---|

Day Job Code "was generally inferior and specifically omitted critical software developments that Anduril was working to accomplish but which were part of the Secret Optimized Code." (Id. ¶ 34.)  Under the  Proprietary Information and Inventions Agreement, both sets of code are Anduril Code owned by Anduril, but Yin kept the code hidden from Anduril.  (Id. ¶¶ 34–35.)

As a college student at Arizona State University ("ASU"), Yin had "developed software code related to electric motor controllers ("Pre-Anduril Code")" that was "for a school project and not ready for commercial use." (Id. ¶ 30.)  Upon his hiring on September 7, 2021, Yin signed a Personal Intellectual Property Disclosure.  (Id. ¶ 42.)  In it, "Yin disclosed and provided Anduril a royalty free license to 'Field Oriented Control Implementation,' the software Yin had written as a school project prior to his employment."  (Id.)  On September 17, 2021, Yin filed a provisional U.S. patent application number 63/245,545 ("'545 Application") titled "Saliency Tracking for Brushless DC Motors and Other Permanent Magnet Synchronous Motors."  (Id. ¶ 43.)  Yin had not disclosed any patent applications on the Personal Intellectual Property Disclosure and "falsely told Anduril that this application belonged to ASU."  (Id.)  On September 19, 2022, Yin filed U.S. patent application number 17/947,916 ("'916 Application") claiming priority to the provisional '545 Application, with the addition of paragraphs 61 and 96.  (Id. ¶ 44.)  Both patents "relate[] to the projects Yin was hired to work on at Anduril."  (Id. ¶ 45.)

Yin and Mali used their time at Anduril to create Salient, including "fail[ing] to show up for work," "h[olding] meetings with potential Salient investors at Anduril," and "ma[king] presentations for Salient seeking investment from Anduril's own investors." (Id. ¶¶ 48–50.)  On September 21, 2022, Defendants registered the domain name "www.salientmotion.com" for Salient's website.  (Id. ¶ 55.)  Defendants incorporated Salient "on or about October 3, 2022."  (Id. ¶ 61.)  Mali's employment at Anduril ended on October 10, 2022.  (Id. ¶ 57.)

Salient's Pitch Deck to investors "identified Yin, Mali, and Jenkins as Salient employees even though Yin and Jenkins were still Anduril employees on October 18, 2022, the date the Pitch Deck was created."  (Id. ¶ 50.)  The Pitch Deck used Anduril's name and logo and "falsely suggest[ed] that Defendants had authority to use Anduril software or that Anduril was using Salient software and suggests an affiliation" between the companies, but "Anduril never used the stolen Secret Optimized Code."  (Id. ¶ 51.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-01650-JVS-KES                    Date    March 4, 2024

Title    Anduril Industries, Inc. v. Salient Motion Inc. et al.

The Pitch Deck "also falsely claims that Yin 'has a patent on his sensorless control algorithm.'" (Id. ¶ 54.)  Yin's employment at Anduril ended on October 21, 2022.  (Id. ¶ 58.)  Jenkins's employment ended on October 24, 2022.  (Id. ¶ 59.)

In October 2022, "Yin copied the Secret Optimized Code into the [sic] Salient's GitHub repository," and Defendants "have continued to create derivative versions of Salient's code using the stolen Secret Optimized Code."  (Id. ¶¶ 64, 66.)  In November 2022, Anduril notified Defendants of their suspected violation of "contractual and other legal obligations to Anduril."  (Id. ¶ 67.)  On December 12, 2022, Anduril and Defendants signed a Letter of Understanding, which provides, in part:

> [Defendants] have not retained any confidential or proprietary materials or information, including but not limited to source code, from their employment with Anduril.

> [Defendants] do not possess any source code developed or owned by Anduril. This includes, among other things, any source code written, developed, or acquired by Former Employees in their capacity or otherwise during their time as Anduril employees.

> [Defendants] are not currently using, and will not use in the future, any source code developed or owned by Anduril, whether for Salient Motion or for any other venture.

> [Defendants] may use source code that was developed by Former Employees prior to their employment with Anduril, but such use does not extend to any improvements or other modifications that were made to that source code during the time that any Former Employee was employed at Anduril.

> [Defendants] will, upon signing this Letter of Understanding, promptly provide a platform on which a third-party reviewer selected by Anduril (and subject to a non-disclosure agreement) may review the relevant code. Further, if new or currently unknown information arises in the twelve (12) months following the signing of this Letter of Understanding, Anduril may, based on a good faith interpretation of this new information, request that Signees provide further relevant code for third-party review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-01650-JVS-KES                     Date   March 4, 2024

Title   Anduril Industries, Inc. v. Salient Motion Inc. et al.

[Defendants] will not represent to potential investors, partners, or any other person or entity that their source code was developed or run on any Anduril products or systems.  Nor will Signees represent that their code or products have been validated, tested, or developed by Anduril.

[Defendants] will not use Anduril's name, logo, or other intellectual property to suggest any relationship between themselves and Anduril, without the prior written consent of Anduril's Chief Legal Officer. This does not preclude the Former Employees from stating that they previously worked at Anduril.

(Compl., Ex. H, Letter of Understanding at 1–2, Dkt. No. 1-1.)  Following the Letter of Understanding, "Salient made available its GitHub repository to a third party for inspection and comparison with Anduril Code." (Compl. ¶ 69.)  According to the inspection, "Yin created the Secret Optimized Code and provided it to Salient, and . . . Salient continues to possess and use Anduril Code." (Id.)  Salient thus "ratified and accepted the benefits of the Employee Defendants' unlawful actions prior to Salient's incorporation" by "entering the LOU, using the Anduril Code, and continuing to receive the services of the Employee Defendants." (Id.)  Moreover, in January 2023, "Yin assigned the '916 Application to Salient." (Id. ¶ 65.)

Anduril filed the Complaint on September 6, 2023 alleging sixteen claims: (1) misappropriation of trade secrets pursuant to Defend Trade Secrets Act 18 U.S.C. § 1836, *et seq.* against all Defendants; (2) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426, *et seq.* against all Defendants; (3) misappropriation of trade secrets under Delaware Uniform Trade Secrets Act, Delaware Code Annotated title 6, § 2001 (2023), *et seq.* against all Defendants; (4) breach of written contract with respect to the Employment Agreements against Employee Defendants; (5) breach of written contract with respect to the Proprietary Information and Inventions Agreement against Employee Defendants; (6) breach of written contract with respect to the LOU against all Defendants; (7) breach of employee's duty of loyalty under California law against Employee Defendants; (8) aiding and abetting Employee Defendants' breach of employee's duty of loyalty under California law against Salient; (9) false association or endorsement pursuant to Lanham Act, 15 U.S.C. § 1125(a), *et seq.* against Salient; (10) California unfair business practices pursuant to California Business and Professions Code § 17200, *et seq.* against Salient; (11) Delaware unfair business practices pursuant to Delaware Code Annotated title 6, §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | 8:23-cv-01650-JVS-KES | | Date | March 4, 2024 |
| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. | | | |

2531 (2023), *et seq.* against Salient; (12) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 against Yin and Salient; (13) contributory violation of the DMCA against Mali, Jenkins, and Salient; (14) conversion against Yin and Salient; (15) aiding and abetting conversion against Mali and Jenkins; and (16) injunction and declaratory judgment of ownership of the Anduril Code, '916 Application, and other patents claiming priority therefrom against Salient. (Id. ¶¶ 71–237.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III. DISCUSSION

Defendants move to dismiss eleven of Anduril's sixteen claims: (1) federal misappropriation of trade secrets; (2) California misappropriation of trade secrets; (3) Delaware misappropriation of trade secrets; (4) breach of the Employment Agreements; (5) breach of the Proprietary Information and Inventions Agreement; (7) breach of employee's duty of loyalty under California law; (12) violation of the DMCA; (13) contributory violation of the DMCA; (14) conversion; (15) aiding and abetting conversion; and (16) injunction and declaratory judgment of ownership. (Mot. at 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |

| | |
|---|---|
| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |

    *A.    Choice of Law*

    As a threshold matter, the Court addresses the issue of choice of law.  Plaintiffs' Complaint does not limit its misappropriation of trade secrets and unfair business practices claims to the law of one state.  Thus, the Court requested the parties to file supplemental briefs on the issue of which state's law to apply: California or Delaware.  (Dkt. No. 42.)

    Anduril argues that it would promote judicial efficiency to defer the choice-of-law question because the Court need not answer it to resolve the present motion, particularly because Defendants only seek dismissal of the trade secret misappropriation claims and there is no meaningful difference between the claims under California and Delaware law.  (Anduril's Supp. Brief at 4, Dkt. No. 45.)  Anduril asserts that, "[t]hough much of Defendants' conduct that underlies each of Anduril's claims presumably occurred in California," further discovery could develop a record for a choice-of-law analysis should it come to light that "other relevant events may have occurred in other places."  (Id. at 5.)  Further, Anduril argues that although "there are no currently relevant differences" between the misappropriation of trade secrets and unfair business practices claims under California and Delaware law and "California's governmental interest approach to choice of law does not require further analysis," it "could be subject to change at a later stage of the case."  (Id. at 6.)

    Defendants, on the other hand, argue that "delaying the choice-of-law determination would force Defendants to defend against an array of claims that everyone agrees will not all proceed to trial."  (Defendants' Supp. Brief at 5, Dkt. No. 46.)  Defendants also argue that Anduril will not suffer prejudice if it proceeds with the federal and California claims only because the Delaware claims are "mirror-images" of their Delaware counterparts and "Anduril will be able to pursue any theories, remedies, and damages" under California law as it could under Delaware law.  (Id.)

    As Defendants note, the California Supreme Court has acknowledged "the importance of determining the choice of law early on in a case—to enable trial courts to manage proceedings in an orderly and efficient fashion."  Chen v. L.A. Truck Ctrs., LLC, 7 Cal. 5th 862, 870 (2019).  In the interest of judicial economy and avoiding unnecessary time and effort expended on litigating ultimately doomed claims, the Court proceeds with the choice of law analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |
|---|---|---|---|

| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |
|---|---|

Federal courts sitting in diversity apply the procedural choice-of-law rules of the forum state. Alaska Airlines, Inc. v. United Airlines, Inc., 902 F.2d 1400, 1402 (9th Cir.1990). The Court thus applies California's choice-of-law rules. "When two states are potentially interested in having their laws applied, California courts employ a governmental interest analysis to determine possible conflicts of law for issues not governed by contractual choice of law provisions." Hill v. Novartis Pharm. Corp., No. 1:06-cv-939, 2012 U.S. Dist. LEXIS 38516, at *3–4 (E.D. Cal. Mar. 20, 2012). While there are contracts in dispute that refer to California law for claims regarding employment agreements, California Labor Code Section 2870, and "the meaning, effect or validity" of the contracts, (Complaint, Exs. D–F, Proprietary Information and Inventions Agreement ¶ 9, Dkt. No. 1-1), the provisions do not govern the misappropriation of trade secrets and unfair business practices claims. The Court must therefore conduct a choice-of-law analysis under the governmental interest test.

The governmental interest test involves three steps. First, "the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107 (2006). Second, if there is a difference in the laws, "the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." Id. at 107–08. Third, if there is a "true conflict," the court "carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied." Id. at 108. (internal quotation marks and citation omitted).

The parties agree that there is no material difference in the law of California and Delaware governing claims for misappropriation of trade secrets and unfair business practices. (See Anduril's Supp. Brief at 5–7; Defendants' Supp. Brief at 2.) Upon review of the relevant statutes, the Court also finds no material difference. California Civil Code section 3426 and onward codifies the state's Uniform Trade Secrets Act, and section 2000 and later of Title 6 of the Delaware Code codifies its Uniform Trade Secrets Act. In one example of their similarity, both statutes set for identical definitions of "misappropriation." Cal. Civ. Code § 3426.1; Del. Code Ann. tit. 6, § 2001 (2023). They also provide for the same remedies. Cal. Civ. Code § 3426.3; Del. Code Ann. tit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |

| | |
|---|---|
| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |

6, § 2003 (2023). There do not appear to be any differences that would affect the
Court's analysis or remedies, and the parties have not briefed any. Since the laws are so
similar, Delaware's interest would not be impaired if its law were not applied. As
Plaintiffs acknowledge, the similarity means choice of law "does not require further
analysis" and the inquiry ends here.

Accordingly, the Court finds that California law applies, and the Delaware claims
for misappropriation of trade secrets and unfair business practices are dismissed.

### B. *Trade Secret Misappropriation*

Defendants argue that the Complaint's two categories of trade secrets—"Anduril
Code" and "other trade secrets—do not identify the trade secrets at the center of the
misappropriation claims with sufficient particularity. (Mot. at 3, 5.) Regarding Anduril
Code, Defendants assert that the Complaint does not clarify any other subsets of code
other than "Secret Optimized Code" and "Substandard Day Job Code," thereby alleging
that "any software code Mr. Yin wrote during the time he was employed at Anduril,"
regardless of its relation to his employment, is "a trade secret owned by Anduril." (Id. at
6 (quoting Compl. ¶ 72).) Defendants also contend that the misappropriation claims only
make conclusory allegations as to Jenkins and Mali without pleading facts that they
"transferred any Anduril code, trade secrets, or any other Anduril information
whatsoever to Salient." (Id. at 7.)

Anduril responds that Defendants selectively quote the Complaint and leave out its
sufficient pleadings as to who wrote the code ("Yin") (Compl. ¶ 31); what the code does
("send and receive signals from the motor to ensure, for example, a smooth start up and
shut down that avoids damage or unnecessary wear on the physical components")
(Compl. ¶ 30); when Yin wrote the code ('during [Yin's] time at Anduril' between 'May
17, 2021' and 'October 21, 2022'") (Compl. ¶¶ 26, 31, 59); where the code resides
(currently in "Salient's GitHub repository" but should be in Anduril's "access-controlled
computing environment") (Compl. ¶ 22); how Anduril owns the code ("[b]y virtue of the
[Proprietary Information and Inventions Agreement] and other circumstances of Yin's
employment") (Compl. ¶ 35); and why Yin wrote the code ("in response to his
supervisor's requests") (Compl. ¶ 33). (Opp'n at 5.) Anduril maintains that it has "gone
into great detail" regarding the details of the trade secrets to "pass muster under Rules 8
and 12." (Id.) Anduril contends that Defendants do not provide analysis of the case law,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |

| | |
|---|---|
| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |

and the cited cases "do not pertain to source code at all, and none of which identified stolen source code by location, time of creation, function, authorship, and other circumstances as Anduril does here." (Id. at 6.) Anduril argues that many of Defendants' assertions about Yin's unrelated code, code written not "on Anduril's time," code written on personal computers, or whether the Anduril code meets trade secret protection requirements are either irrelevant or fact disputes not resolvable on a motion to dismiss. (Id. at 9–10.) Anduril also asserts that the Complaint sufficiently alleges claims against Jenkins and Mali, including allegations that they took "Yin's secret code" to their new company and solicited Anduril investors with it. (Id. at 11 (citing Compl. ¶¶ 3–4).)

To prove a claim for misappropriation under CUTSA, the plaintiff must prove (1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret. Cal. Civ. Code § 3426.1. A trade secret is information that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Id. § 3426.1(d).

"The standard to show that trade secrets derive [independent] economic value is not a high standard." Cisco Sys., Inc. v. Chung, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020). "To have independent economic value, a trade secret must be sufficiently valuable and secret to afford an actual or potential economic advantage over others." Id. "The [generally known] inquiry is not whether the alleged trade secret has been publicly disclosed at all, but whether it has become 'generally known to the relevant people, i.e., potential competitors or other persons to whom the information would have some economic value[.]'" Kittrich Corp. v. Chilewich Sultan, LLC, No. CV 12-10079-GHK-ARGx, 2013 WL 12131376, at *4 (C.D. Cal. Feb. 20, 2013) (quoting DVD Copy Control Ass'n, Inc. v. Bunner, 116 Cal. 4th 241, 251 (2004)).

Whether the information was subject to reasonable efforts to maintain its secrecy is "fact-intensive" inquiry. Chung, 659 F.3d at 826; Mattel, Inc. v. MGA Ent., Inc., 782 F. Supp. 2d 911, 959–60 (C.D. Cal. 2010). Reasonable efforts to maintain secrecy "may include advising employees of the existence of a trade secret, limiting access to the trade secrets on a need to know basis, requiring employees to sign confidentiality agreements,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-01650-JVS-KES                    Date    March 4, 2024

Title    Anduril Industries, Inc. v. Salient Motion Inc. et al.

and keeping secret documents sequestered under lock and key." Brocade Commc'ns
Sys., Inc. v. A10 Networks, Inc., No. C 10-3428, 2013 WL 831528, at *18 (N.D. Cal.
Jan. 10, 2013).

Here, the Court must first determine whether the Complaint sufficiently alleges a
trade secret. The Complaint clears this hurdle handily. First, it alleges Anduril's
derivation of value from software that is not generally known in that "[c]ustom software
that optimizes these motors' performance is an essential part of Anduril's business that
differentiates it from its competitors." (Compl. ¶ 31.) The Complaint describes the ways
in which Anduril derives independent economic value from the code not being generally
known, such as the code's secrecy preventing copying by competitors who could "gain
the benefit of Anduril's investment in developing the Anduril Code without themselves
having to incur the costs." (Id. ¶ 38.) Thus, the secrecy of the code affords Anduril an
advantage over competitors who might otherwise "not have to pay the salaries of
engineers to write the code" or "go[] through the process of independent creation,"
thereby "mov[ing] competitor's program ahead by months or years." (Id.) Those
competitors would alternatively have to pay Anduril a license fee, demonstrating that the
code has economic value. (Id. ¶ 39.) Highlighting the importance of the secrecy of the
code, Anduril's business would be undermined if it were to be made public because
"public or more widespread disclosure of Anduril Code can make Anduril's products
less attractive to its defense customers," showing how "its products could be more easily
disabled by criminals or adversaries." (Id. ¶ 41.) The Complaint also states a litany of
reasonable efforts by Anduril to maintain the secrecy of the code, including
confidentiality agreements, limits on access to code, secure physical premises,
confidentiality markings on documents, software detection of attempted sharing of
confidential information, and a policy requiring employees to write code in an "access-
controlled computer environment." (Id. ¶ 22.)

"Under both the [Defend Trade Secrets Act] and the CUTSA, 'misappropriation'
means either (1) the '[a]cquisition of a trade secret by another person who knows or has
reason to know that the trade secret was acquired by improper means;' or (2) the
'[d]isclosure or use of a trade secret of another without express or implied consent.'"
Alta Devs., Inc. v. LG Elec., Inc., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citations
omitted). Misappropriation by acquisition occurs when a person acquires the trade
secret, knowing (or having had a reason to know) that the trade secret was acquired by
improper means, which includes "breach or inducement of a breach of duty to maintain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-01650-JVS-KES                        Date   March 4, 2024

Title   Anduril Industries, Inc. v. Salient Motion Inc. et al.

secrecy." Cal. Civ. Code. § 3426.1(a), (b)(1). A person who discloses or uses the trade secret is liable for misappropriation if the person had reason to know that the knowledge was derived from a person who owed a duty to keep it secret. Cal. Civ. Code § 3462.1(b)(2)(B)(iii).

Defendants challenge the misappropriation claims by applying a far higher pleading standard than what is required under <u>Twombly</u> and <u>Iqbal</u>. It is not necessary for Anduril go beyond the "who, what, where, when, why, and how" that it identifies in the Complaint, such as specifying Yin's authorship of motor controller code during the term of his employment. As Anduril correctly notes, "it is hard to imagine how Anduril could be more specific without actually including the code in the Complaint." (Opp'n at 6.) Anduril alleges that Defendants disclosed Anduril Code to Salient and used it as Salient's own. (Compl. ¶¶ 75–76.) "When they were finished using Anduril to provide them access to trade secrets and fund their secret code development, Yin, Mali, and Jenkins took Yin's secret code and his patent application to their new company and solicited investment from Anduril investors . . ." (Compl. ¶¶ 3–4.) On Defendants' duty to maintain confidentiality, Anduril points to the duty of loyalty under California law, the Employment Agreements, and the [PIIAs]. (<u>Id.</u> ¶ 77.)

At most, Defendants raise fact disputes as to what code is related to Yin's employment, the specific identification of which extends beyond the motion to dismiss stage. Yin was tasked with writing such software as part of employment at Anduril. (<u>Id.</u> ¶ 33.) As alleged, Yin wrote code responding to this same assignment at home during his employment and used it to support his new company Salient. (<u>Id.</u> ¶¶ 63–65.) Whether the independently produced software code is subject to the employment agreement and supports Plaintiffs' claims are questions to be answered with further discovery.

Accordingly, the Court finds that Anduril has sufficiently stated claims for trade secret misappropriation.

C.   *Breach of Employment Agreement and Proprietary Information and Inventions Agreement*

Defendants argue that the breach of employment agreement claim fails with respect to "steal[ing] the Anduril Code," filing the '545 and '916 Applications, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |
|---|---|---|---|

| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |
|---|---|

"set[ting] up Salient while still Anduril employees." (Mot. at 7.) Similar to the contentions it makes above, Defendants argue that the Complaint does not specify what Anduril Code was stolen, especially because Anduril only owns code "made or conceived or reduced to practice, in whole or in part, by [its employees] during the term of [their] employment with [Anduril] to and only to the fullest extent allowed by California Labor Code Section 2870." (Id. at 8 (quoting Compl. ¶ 29).) Likewise, Defendants argue that the changes Yin made to the U.S. Patent Office filings regarding the '916 Application do not fit this criteria. (Id.) Defendants reassert their arguments for the breach of Proprietary Information and Inventions Agreement claim. (Id. at 9.)

Anduril responds that "[w]riting motor controller code was what Yin was hired to do" and that any code not covered by his employment agreements is not relevant to whether he stole Anduril's code. (Opp'n at 13–14.) Regarding the patent applications, Anduril asserts that the September 2021 filing occurred four months into Yin's employment and was thus "conceived and reduced to practice as an Anduril employee." (Id. at 14.) Even if Yin's provisional application were complete prior to his employment in May 2021, Anduril argues that the non-provisional application filed in October 20222 contains at least two paragraphs that the 2021 provisional application did not, and they established that he "developed the application 'in part' while at Anduril." (Id. at 14–15.)

The relevant terms of the Employment Agreement and Proprietary Information and Inventions Agreement pertain to limits on employees' competition with Anduril during their employment and Anduril's ownership of intellectual property created during employment that relate to Anduril's business.

The Employment Agreement states, in part:

During employment with Anduril, you will not engage in any other employment, consulting or other business activity that would create a conflict of interest with Anduril without the prior written consent of Anduril. By signing this letter agreement, you confirm to Anduril that you have no contractual commitments or other legal obligations that would interfere with or prohibit you from fully performing your duties for Anduril.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-01650-JVS-KES                Date   March 4, 2024

Title        Anduril Industries, Inc. v. Salient Motion Inc. et al.

(Employment Agreement at 2.)  The Proprietary Information and Inventions Agreement states:

> I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement or my employment with Company. . . .
>
> Company shall own all right, title and interest (including patent rights . . .) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by me during the term of my employment with Company to and only to the fullest extent allowed by California Labor Code Section 2870 . . . and I will promptly disclose all Inventions to Company.
>
> . . .
>
> I agree that all Inventions and all other business, . . . that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence, constitute "Proprietary Information."  I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information. . . . Upon termination of my employment, I will promptly return to Company all items containing or embodying Proprietary Information . . . .
>
> Until one year after the term of my employment, I will not encourage or solicit any employee or consultant of Company to leave Company for any reason (except for the bona fide firing of Company personnel within the scope of my employment).
>
> I agree that during the term of my employment with Company (whether or not during business hours), I will not: (I) engage in any activity that is in any way competitive with the business or demonstrably anticipated business of Company; (ii) engage in any activity that would otherwise conflict with the Company's interests or cause a disruption of its business operations or prospects; and (iii) assist any other person or organization in competing or in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-01650-JVS-KES                    Date    March 4, 2024

Title    Anduril Industries, Inc. v. Salient Motion Inc. et al.

preparing to compete with any business or demonstrably anticipated business of Company or to engage in any activity that would otherwise conflict with the Company's interests or cause a disruption of its business operations or prospects.

(Proprietary Information and Inventions Agreement at 1–2.)  The Proprietary Information and Inventions Agreement draws its scope to the fullest extent allowed under California Labor Code § 2870, which states:

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

Cal. Lab. Code § 2870.

As discussed *supra*, the Complaint sufficiently alleges that Defendants took Anduril Code and used it as part of their efforts to start a competing business in Salient during their employment with Anduril.  The motor controller code that Anduril alleges Defendants marketed through Salient relates to Yin's assignment to develop such code as an employee, satisfying § 2870's exemption "for those inventions that . . . [r]elate at the time of conception or reduction to practice of the invention to the employer's business." Id.  Moreover, the Complaint alleges that the Motor Controller NDA violates the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-01650-JVS-KES            Date    March 4, 2024

Title    Anduril Industries, Inc. v. Salient Motion Inc. et al.

Employment Agreement's provision that employees have "no contractual commitments or other legal obligations that would interfere with or prohibit [Yin] from fully performing [his] duties for Anduril." (Compl. ¶ 47.)

Defendants also argue that California duty-of-loyalty law protects Defendants' "preparing to compete" actions as they "sought or assisted in the seeking of investment for Salient while they were Anduril employees, created the Salient website, created Salient, allowed themselves to be held out as Salient employees while they were Anduril employees, and encouraged each other to leave Anduril for Salient." (Mot. at 8–9 (quoting Compl. ¶ 110).)

Anduril responds that California's "preparing to compete" doctrine does not apply to the contract as a recitation of the duty of loyalty because the contract itself has no "preparing to compete" exception. (Opp'n at 15.) Even if the contract contains the common law exception, Anduril contends that building a company around stolen code, advertising the code as having "been tested in Anduril products," failing to show up for work, "using their time and Anduril resources to create Salient," holding meetings with investors at Anduril, and placing the Anduril name and logo on its marketing materials "fall well short of the 'undivided loyalty' they owed to Anduril." (Id. at 15–16.) Anduril also argues that it has alleged a conflict of interest in Yin "withholding the [superior] code from Anduril and transferring it to Anduril's competitor was contrary to Anduril's business interests," (Id. at 16 (quoting Compl. ¶ 222)), and "knowledge of Anduril's product design and business plans provide Yin special advantage in obtaining patent claims that would precisely cover Anduril's actual or future products, maximizing his and Salient's ability to hamper and/or demand licensing fees from their competitor, Anduril," (Id. at 17 (quoting Compl. ¶ 45)).

Defendants rely on Mamou v. Trendwest Resorts, Inc., 165 Cal. App. 4th 686 (2008) for their argument that Anduril's breach of duty of loyalty claim fails because they are protected by California's "preparing to compete" doctrine, but this reliance is misplaced. In Mamou, the court acknowledged that "[a]n employee does not breach his duty of loyalty by *preparing* to compete with his employer." Id. at 719. The court cites a New York case for support, which held that "while an employee may secretly incorporate a competing business prior to departing, the employee may not use his or her principal's time, facilities or proprietary secrets to build the competing business." Id. (citing Chemfab Corp. v. Integrated Liner Techs. Inc., 693 N.Y.S.2d 752, 754 (1999)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |
|---|---|---|---|

| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |
|---|---|

Although Defendants are correct that California law shields some activities of employees as "preparing to compete," the protections are not as expansive as they claim. "While California law does permit an employee to seek other employment and even to make some "preparations to compete" before resigning, California law does not authorize an employee to transfer his loyalty to a competitor.  During the term of employment, an employer is entitled to its employees' 'undivided loyalty.'"  Techno Lite, Inc. v. Emcod, LLC, 44 Cal. App. 5th 462, 471, 257 Cal. Rptr. 3d 643, 650 (2020) (quoting Fowler v. Varian Assocs., Inc., 196 Cal. App. 3d 34, 41 (1987)).  The actions that Defendants argue fall within the "preparing to compete" gambit, such as starting Salient during their employment at Anduril, do not fully capture the extent of the allegations in the Complaint.  The Complaint alleges that Defendants used Anduril property to compete with Anduril, worked on Salient business on Anduril time, and courted investors on Anduril's premises.  (Opp'n at 15–16.)  These steps extend far beyond "secretly incorporating a competing business" so as to not afford protection as "preparing to compete," and they give rise to a conflict of the kind contemplated in the Employment Agreement and Proprietary Information and Inventions Agreement. Accordingly, Anduril sufficiently states claims for breach of contract.

E.     *Breach of Duty of Loyalty*

The parties reassert their above arguments for the breach of duty of loyalty claim, including those concerning the applicability of the "preparing to compete" doctrine. (Mot. at 9–10; Opp'n at 17.)  For the same reasons stated *supra* regarding the existence of a conflict in violation of the Employment Agreements, Anduril has sufficiently stated a claim for breach of duty of loyalty.

F.     *DMCA*

Defendants argue that the Complaint fails to state a claim with respect to the DMCA because its allegations that Yin "wrote certain code at home, on his personal computer, and then used that code for non-Anduril purposes" does not sufficiently allege that Defendants "circumvent[ed] a technological measure that effectively controls access to a work protected under this title." (Mot. at 9 (quoting 17 U.S.C. § 1201(a)(1)).)  With respect to Jenkins and Mali, Defendants argue that the DMCA claims are insufficiently pled because they allege that they "encouraged Yin's circumvention so that they would benefit by receiving access to Anduril Code without detection." (Id. at 11.)  Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |
|---|---|---|---|

| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |
|---|---|

contend that the DMCA claims against Salient are conclusory in that the Complaint alleges that "Yin was acting as Salient's agent and/or a Salient promoter when he circumvented Anduril's technological measures to control access to its source code." (Id. (quoting Compl. ¶ 175).)

Anduril argues that a "breach of the copyright owner's protocols" constitutes circumvention under the DMCA. (Opp'n at 17–18.) In addition to Yin, Anduril argues that the other Defendants violated the DMCA because they "continue to develop derivative works of the Anduril Code as a result of [Yin's] circumvention." (Id. at 18 (quoting Compl. ¶¶ 176, 183).)

The DMCA prohibits a person from "circumvent[ing] a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). To "circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." Id. § 1201(a)(3)(A). A technological measure "'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." Id. § 1201(a)(3)(B).

Contributory liability is analyzed under the DMCA in the same manner as determining contributory liability for copyright infringement. See Ellison v. Robertson, 357 F.3d 1072, 1077 (9th Cir. 2004) ("Claims [under the DMCA] . . . for direct, contributory, or vicarious copyright infringement, [] are generally evaluated just as they would be in the non-online world."). The Ninth Circuit has found contributory liability when the defendant "engages in 'personal conduct that encourages or assists the infringement.'" A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1019 (9th Cir. 2001) (citation omitted). "One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another may be liable as a 'contributory' [copyright] infringer." Ellison, 357 F.3d at 1076 (quoting Gershwin Publ'g. Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)). The Ninth Circuit has "interpreted the knowledge requirement for contributory copyright infringement to include both those with *actual knowledge* and those who *have reason to know* of direct infringement." Id. (emphasis in original) (citing Napster, 239 F.3d at 1013). Before a party can establish contributory liability, it must first establish that there

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |
|---|---|---|---|

| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |
|---|---|

has been direct infringement.  Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1169 (9th Cir. 2007) (citing Napster, 239 F.3d at 1013 n.2)).

Once more, Defendants' contentions boil down to factual disputes rather than a failure to state a claim.  The Complaint alleges that "Yin breached Anduril's policy and avoided Anduril's measures to detect and prevent copying and exfiltration of its code." (Compl. ¶ 37.)  Defendants dispute whether the alleged code is in fact owned by Anduril, but this is a fact question not pertinent to a motion to dismiss.  The key consideration here is whether the Complaint's allegations suffice for direct and contributory DMCA violations, and the Court finds that they do.  Anduril requires employees to write their code in a secure, company-controlled environment, but the Complaint alleges that Yin wrote code outside of that environment in order to use it with Salient.

In addition to the allegations that Yin circumvented Anduril's security measures, the Complaint alleges that the other employee Defendants, who signed the same agreements spelling out Anduril's intellectual property rights, "approv[ed] and encourage[d]" Yin's actions and were "planning with Yin to use the Secret Optimized Code to establish Salient."  (Id. ¶ 36.)  The Complaint continues, "Jenkins and Mali were aware of Yin's scheme and assisted him in it, including by soliciting investment for Salient and concealing Salient's and Yin's wrongdoing in the LOU."  (Id. ¶ 70.)  For support, Anduril cites Talavera v. Glob. Payments, Inc., 2023 WL 3080701, at *17 n.13 (S.D. Cal. Apr. 25, 2023), in which "a former licensee of software admitted that it continued to use the software without a license" and the court that such use sufficed for liability under the DMCA.  (Opp'n at 18.)  Although Defendants are not former licensees, but instead former employees, Talavera is instructive for the facts alleged here in that a person who formerly had the right to intellectual property may violate the DMCA by continuing to use it once that right has expired.

G.    *Conversion*

Defendants argue that CUTSA preempts Anduril's conversion claims because they pertain to confidential information, as the court held in Total Recall Techs. v. Luckey, 2016 WL 199796, at *7 (N.D. Cal. Jan. 16, 2016).  (Mot. at 11–12.)  Defendants contend that Anduril's conversion claims regard the Anduril Code and the '916 Patent Application, thus falling within the scope of the statute.  (Id. at 12.)  Anduril responds that because patents "have the attributes of personal property," 35 U.S.C. § 261, they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |

| | |
|---|---|
| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |

"represent a distinct property interest from trade secrets . . . that exist even in the absence of a trade secret." (Opp'n at 20.)

In <u>Total Recall</u>, the court held that "[a]lthough CUTSA does not supersede contractual remedies, it supersedes 'claims based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" <u>Id.</u> (quoting <u>K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.</u>, 171 Cal. App. 4th 939, 958 (2009)). Here, Anduril's claims that Defendants misappropriated trade secrets such as the Anduril Code differs from the claims over its ownership of the '916 Patent Application, the allegations of which concern separate facts from the development of Anduril Code. The filing of patent application materials while employed by Anduril would appear to engage the provisions of the Proprietary Information and Inventions Agreement that govern Anduril's ownership of patents and inventions. The development of the "Anduril Code," as assigned by Anduril while Defendants were employed by Anduril, engages the agreements on facts distinct from the patent. Accordingly, the Court finds that the Complaint alleges a sufficient distinction between the two in order to avoid dismissal based on CUTSA.

## H.    *Declaratory Judgment*

Defendants argue that the declaratory judgment claim seeking "Judgment of Ownership" fails because, despite references to Anduril Code and the '916 Application, it does not "sufficiently allege what it is that Anduril claims to own." (Mot. at 12.) Anduril responds that it has "plainly alleged that the code and the '916 Application were developed, in whole or in part, at Anduril," so as to necessitate a judicial determination of their ownership.

As the Court has discussed, the Complaint alleges a litany of facts that raise questions as to the ownership of the "Anduril Code" and '916 Application. The ownership of the code and application is central to the underlying claims throughout the Complaint. Thus, Anduril sufficiently states a claim for declaratory judgment.

## IV.  CONCLUSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01650-JVS-KES | Date | March 4, 2024 |
|---|---|---|---|

| Title | Anduril Industries, Inc. v. Salient Motion Inc. et al. |
|---|---|

For the foregoing reasons, the Court **GRANTS** in part the motion with respect to the Delaware misappropriation of trade secrets and unfair business practices claims and **DENIES** in part the motion with respect to all other claims.

**IT IS SO ORDERED.**